THOMAS M. JACKS et al. VS. J. H. BRIDEWELL et ux.

1. CHANCERY PRACTICE: *Rehearing when defendant cited by publication.*
By the Code of 1857, a defendant who was cited to appear by publication only, and who failed to appear and plead, answer or demur, and against whom a decree was rendered, had the right to petition for a rehearing at any time within five years, and where a case has been disposed of by the chancery court held by the circuit judge, under the superseded system, the defendant still has the right to petition the chancery court as it now exists. The right is not affected by the change of the court, and the right would not be barred, except by the limitation of five years prescribed by the Code of 1857, or that of two years by the Code of 1871.

2. SAME: SAME: *Notice of the proceedings.*
The fact that the defendant had full notice of the proceedings, and failed to appear and plead, answer or demur, does not deprive him of the right to the rehearing provided for him by the code.

3. TESTIMONY OF COMPLAINANT: *Competency of, against the estate of a deceased person.* *Code of* 1871, § 758.

If the demand of the claimant be " against the estate of a deceased person," he is incompetent as a witness. The term " estate of a deceased person " is used in its broad and popular sense to signify all the property of every kind which one leaves at his death, any right asserted against real or personal property, left by a deceased person, as accrued to the party by virtue of a dealing between him and such person, since deceased, renders the person asserting it incompetent as a witness, to maintain in his own behalf such assertion of right.

4. BILL IN CHANCERY: *Sworn to by an attorney.* *Code of* 1871, § 1087.

Where a bill is sworn to by an attorney, the complainants are not entitled to the benefit of the Code of 1871, § 1087. The object of this section is to entitle complainant to swear to his bill, putting his oath against that of the defendant, to get clear of the rule requiring two witnesses, or one witness and corroborating circumstances, to overthrow an answer denying the allegations of the bill.

APPEAL from the Chancery Court of *Tunica* County.

Hon. E. STAFFORD, Chancellor.

The facts in the case sufficiently appear in the opinion of the court.

The following errors were assigned:

1. Because complainant's demurrer to defendant's petition was overruled.

2. Because complainant's plea to the application to reopen this cause was overruled.

3. Because the chancellor erred in reopening the case.

4. Because the chancellor erred in dismissing complainant's bill.

*Chalmers & Reid,* for appellants:

The original bill was filed on the chancery side of the circuit court, and sale confirmed before the present chancery court was created, the case has been fully disposed of and the costs paid. It is nowhere denied that defendant had full notice of the proceedings, the plea sets out that she was present in court before *pro confesso* was taken, and made no defense. Graham *v.* Roberts, 1 Head (Tenn.), 56. But the court erred in its final decree. The

complainants filed their bill to foreclose a mortgage executed by Braswell and wife to Freelove Jacks and A. J. French, upon St. Francis Island in Tunica county. This mortgage cannot be produced, but they produce a receipt, as follows:

"Jas. L. Braswell and wife to Thomas M. Jacks and A. J. French. Deed of mortgage, which I will record according to law, and return when called for, as the fees have this day been paid by T. M. Jacks, this 24th day of May, 1862. J. F. SAMPLE, Clerk. By J. C. NELSON, D. Clerk."

Defendant denies that the mortgage was executed; in this, she is only contradicted by Jacks and French. Every reasonable inquiry should be made, etc. Phil. Ev., pp. 347–8; 1 Greenl., 558.

The second point is, that the sworn answer must be overcome by two witnesses, or one witness and strong corroborating circumstances. The answer denies that Braswell was to pay off the Haw debt. This is overcome by a cloud of testimony. No account should be taken between the parties. It would be inequitable and unjust. Complainants took the land as purchasers, not as mortgagees, and they are entitled to all the rights of purchasers.

The title acquired at a decretal sale, if made by a court of competent jurisdiction, is not rendered invalid by a reversal of the decree for mere irregularities or error. 14 Md., 158; 3 Ohio, 389; 18 B. Mon., 230; 1 Wall., 627. This too, although the purchaser was a party to the suit, in which the decree was made. 18 B. Mon., 230; 3 How. (Miss.), 66; 4 id., 267; 13 S. & M.. 182.

*George W. Winchester*, for appellees:

The bill was sworn to by one of the attorneys, that the heirs are unknown, * * * and that he believes they are nonresidents. These are the only allegations in the bill that are sworn to. Publication was made, no appearance, a *pro confesso* and a decree; sale was made, complainants became the purchasers, and deed was made and sale confirmed. On October 7, 1872, and within five years, Mrs. Bridewell, the widow and only heir and devisee of Jas. L. Braswell, filed her petition for rehearing. Code of 1857, arts. 36, 37, § 6, p. 546. The court should have decreed the

rents and profits: 1. Because if correct in dismissing the original bill and awarding the writ of possession, the right to rents and profits followed as a matter of course. 2. The court should make a complete decision on all points, and preclude all further litigation between the parties. 2 Daniel's Ch. Practice (Perkins ed.), 1006. The chancery court of Tunica county is the legitimate successor of the old chancery court. As to the statute of limitations, Code of 1871, §§ 1070, 1264, cannot apply to this case. It can only operate prospectively. A retrospective law is one which takes away or impairs vested rights, or creates a new obligation. Angell on Lim., § 22, note 2; 3 Dall., 386; 7 N. Y., 447; 1 How. (Miss.), 133. The general principle is, that no statute is to have a retrospect beyond the time of its commencement. Dwarris, p. 162; Bacon's Abr., title Stat., 6; Sedgwick on Stat. & Const. Law, p. 195; 2 Hill, 238; 40 Miss., 349; 24 id., 377; 23 id., 269; 1 Mich., 295; 25 Vt., 41; 22 Pick., 430; 8 Mass., 429; 4 Gilmore, 321; 28 Miss., 361. It is expressly provided in § 13, art. 1, ch. 1, Rev. Code of 1871, "that the repeal of any statutory provision shall not affect any right accruing or accrued," etc. Code, p. 9. The plea should set forth so much of the pleadings in the former suit as will suffice to show that the same point was in issue, and a prayer that pleadings and proof be made part of the plea does not present the decree or judgment. 1 Dan. Ch. 684–5; 2 Atk., 603; 2 Ves., 577; 14 Johns., 511.

CAMPBELL, J., delivered the opinion of the court.

In August, A. D. 1867, appellants exhibited their bill against "the unknown heirs of James L. Braswell, deceased," and proceeded under art. 35. p. 546, Rev. Code of 1857, to make publication to such heirs, and to make proof of such publication, and to take a decree *pro confesso*, and a final decree. The statement of the bill is, that in 1861, said James L. Braswell and his wife conveyed a tract of land in the state of Missouri to Mrs. F. Jacks and A. J. French, and that said land was mortgaged to secure a debt to one Haw, and that Braswell and wife gave appellants a

mortgage on land in Tunica county owned by said Braswell, to secure the payment by Braswell himself of the debt for which the Missouri land was mortgaged, but that appellants had to pay the debt secured by the mortgage on the land in Missouri, whereby the condition of the mortgage given as aforesaid by Braswell and wife to indemnify against said debt, was broken, and a right accrued to appellants, Jacks and French, to foreclose it. That Braswell had died without paying complainants, and they were ignorant as to who were his heirs, or where they lived. That the said mortgage made by Braswell and wife, as aforesaid, was filed for record in the probate clerk's office of Tunica county in the early part of 1862, but was not recorded, and was lost. The bill was sworn to by an attorney, and not by either of the complainants. The final decree directed a sale of the land alleged to be embraced in said mortgage, and it was sold, and bought by said complainants, who held it afterwards. On the 7th of October, A. D. 1872, and a few days before the expiration of five years from the date of said decree of sale, Elizabeth Bridewell, who was the wife of James L. Braswell, aforesaid, at the time said alleged mortgage was executed, and who since the death of Braswell had married Mr. Bridewell, appeared and petitioned the chancery court of Tunica county for a rehearing, as provided by articles 36 and 37, p. 546 of Code of 1857. To this petition complainants in said bill demurred, and their demurrer was overruled. The causes of demurrer assigned are: That this cause, having been finally disposed of by the chancery court of Tunica county, held by the circuit judge in 1867, the chancery court as now existing has no jurisdiction to grant a rehearing, and that the petition is barred by the Code of 1871 (§§ 1070 and 1264), which requires such petition to be filed within two years instead of five, as provided by the Code of 1857.

The demurrer was properly overruled. Neither cause is good. The establishment of a chancery court in Tunica county, presided over by a chancellor instead of a circuit judge, and separated from the circuit court, did not affect the right of a party against whom

a decree had been rendered in the chancery court, as formerly existing, on proof of publication only, to obtain a rehearing on petition to the chancery court. This was a cause "undisposed of in the chancery" court of Tunica county. Though a final decree had been rendered, it was "upon proof of publication only, without such defendant having appeared and put in a plea, demurrer or answer," and was liable to be "heard anew on its merits" if a defendant should, at any time within five years (or one year, if complainant should serve a copy of said decree on the defendant) appear and petition the court for a rehearing; and it was embraced in the act of 1870, entitled "an act in relation to chancery courts," approved May 4, 1870, the 25th section of which transfers to the chancery court of each county, as established under the constitution of 1869, "all causes and proceedings remaining undisposed of." That means all causes and proceedings in which any step may be taken by law, or in reference to which the power of the court might be invoked in said cause. Certainly, at the date of that act it was competent for Mrs. Bridewell to petition the court which rendered said decree for a rehearing, and when the newly established chancery court of Tunica county came into existence the cause was continued in that for any proceeding in it contemplated by law. Probably such would have been the case, if the statute had not expressly so provided. It might have resulted from the mere creation of the chancery court of Tunica county.

The petition was not barred by limitation of time. It was presented within five years after decree, and was not barred under the code of 1857, and within two years after the code of 1871 took effect, and therefore was not barred by that. If five years had elapsed, the petition would have been barred by code of 1857; and if two years had elapsed after the code of 1871 became operative, it would have been barred by that. A party may avail himself of the bar of the statute of limitations of either code. We regard the petition as sufficient on demurrer.

When their demurrer was overruled, complainants below filed

a plea to the petition, the point of which is, that petitioner had full notice of the proceedings in said cause, and had considered the matter of making defense in said suit, and then abandoned the idea of defending; and that she had brought ejectment against complainants for said land, and afterwards dismissed said action. This plea was held bad, and very properly; for although Mrs. Bridewell had full knowledge of the suit against her, as she had been made a party only by publication, and had not "appeared and put in a plea, demurrer or answer," the decree was not final and conclusive, except as prescribed by art. XXXVI, p. 546, Code of 1857; and her right, as given by law to apply for a rehearing, was not in any way affected by her knowledge of the pending suit. The dismissal of her ejectment did not prejudice her right. The petition for a rehearing was rightfully granted, and Mrs. Bridewell answered complainants' bill, and testimony was taken, and the cause was heard anew; and a decree was rendered dismissing the bill and restoring the land sold under the former decree, and purchased by complainants, to Mrs. Bridewell *née* Braswell. From this decree complainants appealed. The chancellor refused to suppress the deposition of complainant Jacks on motion, but held the evidence insufficient to entitle complainants to establish the lost mortgage as set forth in their bill.

In our view, the case turns on the competency of Jacks as a witness, for he testifies to the existence of the mortgage and its contents; and if his testimony is admissible, we are decidedly of the opinion that the bill is maintained, and that complainants are entitled to a decree. Without the evidence of Jacks, the decree should be, as it is, for Mrs. Bridewell. Is Jacks, one of the complainants, a competent witness? Is he attempting "to establish his own claim  *  *  against the estate of a deceased person, which originated during the life time of such deceased person?" Code of 1871, § 758.

The term "claim" was held in Lamar et al. *v.* Williams et al., 39 Miss., 342, to include any "demand or right." asserted and relied on in the action against the estate, and as the Code of 1871

employs this term, it may be regarded as having its meaning fixed as above. Jacks in his bill asserts a "right," which originated during the lifetime of Braswell, and out of a transaction with Braswell, and if it is "against the estate of a deceased person," he is incompetent as a witness. The term "estate of a deceased person" is used, in its broad and popular sense, to signify all the property of every kind which one leaves at his death. Therefore, any "right" asserted against real or personal property left by a deceased person, as accrued to the party by virtue of a dealing between him and such person since deceased, renders the person asserting it incompetent as a witness to maintain in his own behalf such assertion of right. The exclusion is not confined to cases in which the controversy is between him who would testify to his "claim" or "right," and the administrator or executor of the deceased person, but it extends to every assertion of such right by a party to any part of the estate left by a deceased person, and claimed by such party, or to be subject to his demand, by reason of an alleged transaction between such party and the deceased person. To deny the competency of a person to support as a witness his right or demand, as he asserts it as plaintiff or defendant against the administrator or executor, and to allow such person in a controversy with a distributer, or an heir, or other person, to testify to his claim or right or demand, as to the personal or real estate left by the deceased person, and "which originated during the life time of such person," would be to disregard the language of the statute, and the manifest purpose in passing it. Before statutes on the subject, parties to suits were not competent witnesses in their own behalf. With the removal of the incompetency of parties as witnesses for themselves, there was excepted from the cases in which they might testify, all in which a right is asserted against any part of the estate of a deceased person, no matter in whose hands it may be at the time of the controversy, and which "right" rests upon something occurring in the life time of such deceased person, and having relation to him. The object of the exception is to prevent a survivor of some transac-

tion, alleged to give him a right against the property left by the deceased, from supporting his alleged right by virtue of such transaction to which the deceased person was a party, by his own oath, when he cannot be confronted by him with whom he claims to have dealt and obtained some right, as against some part of the estate of the deceased. The object is to prevent the assertion of rights to what a deceased person left, by virtue of some act of such deceased person, from being supported by the testimony of him who asserts the right. Without this prohibition to testify in such cases, the unscrupulous might boldly assert most important rights to property left by deceased persons, acquired, as they would testify, by dealings with such person in his life time, and, sometimes, obtaining credit for their testimony, would inflict serious injury upon those who held any of the estate of such deceased party by descent or devise, or under those to whom it descended or was devised. "When death has placed the evidence of one of the parties to the transaction, out of which the claim arises, beyond the pale of the court, the statute enacts that the other shall not be heard, for or against such claim. As to that tranaction, both of the parties thereto are dead, one through natural causes, the other by legislative enactment."

We think the testimony of Jacks was improperly admitted, but as with that out of view the decree should be for defendant, and was so rendered, we will not disturb it on this account. As this bill was sworn to by an attorney, and not by complainants, they are not able to claim the benefit of § 1087 Code of 1871. The object of that section is to entitle complainant to swear to his bill, and thus by putting his oath against that of defendant, to get clear of the rule requiring two witnesses, or one witness and corroborating circumstances, to overthrow an answer denying the allegations of the bill. In this case, the corroborating circumstances to sustain the bill are numerous and weighty, but without the testimony of Jacks, there is no witness to overthrow the answer denying the bill. If the bill had been sworn to by one of complainants, the rule requiring two witnesses, or one witness and corroborating circumstances, would have been inapplicable.

---

Opinion of the court.

---

After Mrs. Bridewell had filed her answer under the order for rehearing, she obtained an order of court giving her permission to file a cross bill in the case, setting up her claim for rents and profits, and firewood, cut and sold on the mortgaged premises, "in the event complainants should succeed in settling up said mortgage." Under this leave, Mrs. Bridewell did file her cross bill, as above, and praying an account against Jacks and French, in any event of their claims for rents and profits. On this cross bill, a decree *pro confesso* was taken against Jacks and French on a recital in the said decree that they had been cited by publication. The record does not show any further step in the cross bill. No farther notice was taken of it. It was not set down for hearing with the hearing anew of the cause, so far as the record shows. The chancellor dismissed the original bill, and took no notice of the cross bill, and said nothing about it. From this decree, Mrs. Bridewell and husband prosecuted their appeal, and assign for error that the chancellor did not proceed to decree an account for rents and profits, as prayed in the cross bill. Referring to Ladner et al. *v.* Ogden et al, 31 Miss., 332, and Thomason *v.* Neeley, 50 id., 310, we order the decree as rendered below to be affirmed, each party to pay one-half of the costs of these appeals.