LIZZIE JONES AND HUSBAND *v.* HENRY B. SHERMAN.

1. UNITED STATES LAND-LAWS. *Treaty of Dancing Rabbit Creek. Location of float. Evidence.*
   Under the treaty of Dancing Rabbit Creek, the location of a "float" by a reservee or his assignee confers title. But a plaintiff in ejectment relying upon such title must show the actual location of the float upon the land claimed, by one having the right, under the treaty, to make the location. The primary evidence of these facts, if they exist, is contained in the records of the land-office; and they cannot be proven by recitals in deeds, unless the defendant be in privity with the title sought to be established. A patent from the United States is evidence of such title, but is not essential in establishing the same.

2. WITNESS. *Competency. Estate of deceased person. Act of 1878.*
   Under the act of March 1, 1878, amendatory of sect. 758 of the Code of 1871,

where a claimant of land has assigned his title after the death of the party in possession, he cannot testify to a permissive holding under him by such possessor, in an action of ejectment by his assignee against the heir of the deceased possessor.

3. DEED. *Recitals. Evidence. Heirs.*

The recital in a deed that the grantors are heirs of the party who made the bond for title, in pursuance whereof the deed was executed, is not evidence of such relation, and a plaintiff in ejectment claiming title through such deed must prove *aliunde* that the grantors therein are the heirs of the obligor in the bond for title.

ERROR to the Circuit Court of Grenada County.

Hon. SAMUEL POWELL, Judge.

The case is stated in the opinion of the court.

*Golladay & Freeman*, for the plaintiffs in error.

1. Brown was an incompetent witness under the act of 1878 (Laws 1878, p. 190), and should have been excluded. His admission was fatal, and must cause a reversal of the case.

2. It should have been proved that the parties who as heirs of the obligor in the title-bond made the deed in pursuance thereof were heirs. The failure to make such proof is fatal to the paper title. 2 Greenl. on Ev., sects. 309, 354.

3. There was no proof of the location of Donly's float. That was also necessary to the maintenance of the plaintiff's paper title.

*A. H. Whitfield*, for the defendant in error.

1. It is evident from the testimony that Collins's possession was permissive. He entered and held under Brown, and those in privity cannot dispute the title.

2. Brown was a competent witness. *Rothschild* v. *Hatch*, 54 Miss. 554. The act of 1878 was passed after the institution of this suit. But the other evidence makes out Collins's permissive entry and holding, even if Brown's testimony be excluded.

3. The Statute of Limitations is an odious defence, and not designed to be a means of acquiring title. 1 Johns. Cas. 33; Adams on Eject. 552, 579–581, 593, 600. Strict proof is required. 1 Johns. 156; 2 Bibb, 507. There must be

color of title (1 Geo. 407) ; adverse possession must be established.   8 Geo. 529.   See also 3 Geo. 129 ; 8 Geo. 138 ; 7 Serg. & R. 143 ; 2 Pet. 570 ; 8 Smed. & M. 77 ; 9 Johns. 178 ; 18 Johns. 40 ; 16 Johns. 293.

4. As against a mere intruder, the plaintiff is not required to deraign title, but may recover on the strength of his former possession.   *Lum* v. *Reed*, 53 Miss. 73 ; *Kerr* v. *Farish*, 52 Miss. 107.

5. The deeds recite that Donly's float was located, and where, and this estops Collins, who is connected with the title.   *Newman* v. *Doe*, 4 How. 556 ; *Fore* v. *Williams*, 35 Miss. 538.

SIMRALL, C. J., delivered the opinion of the court.

H. B. Sherman, the plaintiff in this ejectment suit, predicated his right to recover the premises in question on two grounds. First, that he had a complete documentary title, derived by mesne conveyances from one Donly, the reservee under the fourth article of the treaty of Dancing Rabbit Creek with the Choctaw Indians, of a right to enter a section of land in the ceded territory, which *float* is claimed to have been located on section 8, township 22, range 5, etc., and that the lot sued for is embraced in that section.   Donly assigned his right, it would seem, before location, to H. B. W. Hill ; from him, by assignment, the claim ultimately vested in Hiram G. Runnells and his associates, styled the Tullahoma Land Company.   It appears, in one or more of the deeds through which Sherman claims, that this float had been located on this section 8, and includes a large part of the town of Grenada, which had been laid off into urban lots.

The deed from Runnells and others to Morton recited the acquisition of title by location of the float as above stated. In the chain of title shown in evidence by the plaintiff was a conveyance from Halliday to T. Fitzgerrald, who executed a bond to convey to Brown.   Long after this, certain persons, describing themselves as the heirs of T. Fitzgerrald, executed

a deed to Brown, who sold and conveyed to Sherman, the plaintiff.

The first question is, Has Sherman proved in himself a complete title?

It is quite conclusively settled by the adjudications that the location of a float acquired under the Dancing Rabbit Creek treaty is the final act which perfects the title, giving to it the attributes of a grant by the United States of the particular parcel of land. But there was no direct and independent testimony that Donly was a reservee under the treaty, nor (if he was) that his float had been located by himself, or his assignee, on this section 8.

The treaty granted all the lands in the ceded territory to the United States, except so much as was reserved to particular persons, who had made settlements and elected to remain, and to those to whom the right had been given to locate certain quantities on any of the unappropriated lands surrendered. It was said in *Land* v. *Keim*, 52 Miss. 350 (citing the cases), " that the import of the cases was, that the treaty operates as a grant to the reservee, which takes effect upon the particular parcel, when specified and located, quite as complete as if the treaty itself had assigned the particular parcel." The treaty made, in effect, a grant ; location specified the tract on which it operated. When located, the " right " relates back to the treaty, and becomes as complete as though the treaty had assigned a particular section. *Minter* v. *Shirley*, 45 Miss. 387. There was documentary evidence in the public records (if the fact was so) that Donly was a reservee, under the treaty, of the right to locate a section of land, and that such location had been made, and where ; and it was incumbent on a party claiming title under the reservee, against a stranger to it, to have produced the primary evidence of his " right " under the treaty, and the actual location of it. The title vests by operation of the treaty and location ; a patent from the United States to the reservee, or

his assignee, would be evidence that all antecedent things had been done (*Minter* v. *Shirley*, *supra*), but would not be essential to confer title.

But it has been insisted that Sherman, in the circumstances of this case, was relieved of the necessity to produce this primary evidence, and may rely on the recitals in the deed from Runnells and others, that the float was actually located on the section 8. That would be so if Collins, the ancestor of Mrs. Jones, the defendant, entered on the land in controversy in privity with the title asserted by Sherman, and referred the inception of his occupancy to that title.

Abundant testimony was delivered to the jury by Brown, the immediate grantor of Sherman, that Collins entered upon the lot, and was permitted to inclose it, with his consent, but that Collins was to surrender possession at his will. That would place Collins in the attitude of a mere bailee, to hold at Brown's pleasure, and would conclude him from controverting Brown's title. But the competency of Brown was excepted to, predicated on the amendment made by the act of 1st of March, 1878, to sect. 758 of the Code. This section is a limitation or exception to sect. 756, and incapacitates a witness to establish his own claim against the estate of a deceased person, etc. The amendment introduces another disability, viz. : "And no assignment, release, or transfer of interest, made after the death of such deceased person, shall have the effect to render such person, so transferring, a competent witness." In his testimony, Brown stated that he had sold and conveyed the lot to Sherman after the death of Collins.

That the purpose and effect of this amendment may be distinctly seen, it becomes necessary to consider the state of the law, as declared by this court, expository of the provisions of the Code. In *Rothschild* v. *Hatch*, 54 Miss. 560, the idea was emphatically repudiated that the statute intended to incapacitate a witness who was competent at the common law. By the rules of the common law, the test of competency

was *interest* or *no interest* at the time the witness deposed. On that view of the statute, the court disapproved of the decision in *Reinhart* v. *Evans*, 48 Miss. 230, which held the assignor of a chose in action incompetent to testify in a suit by the assignee against the personal representative of the debtor. Very shortly after the decision in *Rothschild* v. *Hatch*, the Legislature then in session amended sect. 758 of the Code in the manner above stated, intending thereby to incorporate in our law of evidence the rule declared in *Reinhart* v. *Evans*, which was, that a party who had transferred a right of action could not testify in a suit of the transferee against the representatives of the deceased party. In *Jack* v. *Bridewell*, 51 Miss. 887, it had been ruled that Jack could not testify to establish a right as mortgagee against the heirs of Bridewell, deceased, which would affect the real estate.

In this condition of the law, the Legislature interposed the further disability that the assignor, releasor, or transferror of interest, *after* the death of such deceased person, shall render the transferror incompetent. In *Jack* v. *Bridewell*, *supra*, it had been said that real estate devised or descended, was, in the sense of the Code, the " estate " of such decedent.

It would seem that the Legislature designed to put the transferrer of any sort of interest — whether of a debt or property, personal or real — under disability to testify, if the transfer was made after the death of the person under whom the defendant claims, so far as relates to acts or matters, as between himself and such deceased person, affecting the title. Brown was incompetent to prove the acts and colloquiums between himself and Collins, affecting the title which he had transferred after Collins's death.

That testimony was vital to the plaintiff's recovery. For, whether the plaintiff had made out a paper title or not, if Collins entered by permission of Brown, his continued possession would have been under that license; he would have been esteemed as holding all the time for Brown or his

assignee, and as being protected by Brown's title. Nor would he or his heir be permitted to plead against Brown or Sherman that his occupancy for fifteen years conferred an adversary right.

In such circumstances, it would be a matter of indifference to him whether Brown's title was legal or equitable, — whether it was perfect against all opposers or not. It sufficed for his entry and quiet enjoyment, and he would not be allowed to criticise it or point out its imperfections.

There is another objection to the title, which was not obviated by testimony. Fitzgerrald executed to Brown a bond to convey on the happening of a future contingency. A deed was in evidence, purporting to have been executed by Fitzgerrald's heirs; but there was no proof of his death, nor that the grantors were his heirs. The recital that they were is not proof of the fact against Mrs. Jones, unless she sustained some relation of privity to the title.

The testimony of Brown excluded, the plaintiff's case would be this: By mesne conveyances, parties claiming to be the owners of section 8, township 22, range 5 east, transfer lot 86 to Brown, and he to Sherman; but it in no wise appears, by direct proof, that lot 86 in Grenada is embraced in the section, except by recitals in one or more of the deeds. Nor was it proved that Donly's float was located on this section, except inferentially from such recitations.

It has been urged by counsel that there is enough to sustain the verdict without the testimony of Brown. We do not think so. Gales was not able to refer the remarks made by Brown in 1855 to the lot involved, or to any specific lot. Discarding altogether Brown's statement, there is no proof of how Collins's entry was made, or in what right.

The defendant, Mrs. Jones, may rely implicitly on her possession, unless the plaintiff has shown a title which gives him a right of entry, which must be either a paramount paper title, or such possession continued long enough under claim and color of right as under our law makes of itself a title, or unless

the defendant stands in such relation to the plaintiff or his title as that she cannot dispute it.

In this case, in the particulars specified, Sherman did not show a complete paper title; nor did he show that he, and those under whom he claimed, had been in the possession of the premises, under color of right, claiming exclusive right, long enough to confer title before Collins entered; nor has he shown by competent testimony that Collins entered under him or his grantor, and in subordination to the title.

There is error, as hereinbefore indicated.

Judgment reversed and a *venire de novo* awarded.