W. F. POLLE *v.* JOHN T. ROUSE.

1. DEED OF TRUST.    *Property covered.    Machinery purchased by tenant.    Vendor's retention of title.    Purchaser at trustee's sale.*

   Where a deed of trust upon lands contains a stipulation that all machinery on the premises. or that might be afterwards put thereon, shall be covered by it, and the grantor's tenant in possession buys and places thereon machinery, the title to which is retained by the vendor until payment of the purchase money, a purchaser of the land at foreclosure sale acquires no such right as will enable him to resist the vendor's action of replevin for the machinery, on default in the payment of the price thereof.

2. SAME.    *Substituted trustee.    Appointment.*

   Where a deed of trust upon lands provides that, upon the death, removal, etc., of the trustee named therein, the beneficiary may,

by "a duly executed deed of appointment duly recorded in the county," etc., appoint another trustee in his place, a foreclosure sale, made by one whose appointment is not otherwise shown than by a recital in his deed to the purchaser of an appointment, "in writing," confers no title upon the purchaser, who has only a right of substitution to the debt discharged by the money he paid.

FROM the circuit court of Bolivar county.

HON. R. W. WILLIAMSON, Judge.

Replevin by the appellee, Rouse, for a boiler, engine and other machinery sold to one Kuhn, with a retention of title until payment of the purchase money. The opinion states the facts of the case. Judgment for plaintiff in replevin, and appeal by defendant.

*Sillers & Owen*, for appellant.

The machinery, being necessary for the improvement of the place, became a fixture, unless, by agreement of all the parties in interest, including the Equitable Mortgage Co., it was to remain a chattel. Neither Polle nor the Equitable Mortgage Co. knew of the contract between Kuhn and Rouse, and they did not consent for Rouse to move the property. The deed of trust was notice to the world that all machinery on the land and to be put upon it would become fixtures and subject to the deed of trust. Neither the Equitable Mortgage Co. or Armistead, the purchaser under the deed of trust, had notice of the secret claim of Rouse to the machinery, and both Kuhn and his attorney were at the sale. Armistead was permitted to buy without notice of it, and cannot be affected by it. The title to the land and improvements passed to Armistead under the sale, and is a valid title until set aside by the proper court at the instance of the proper parties. If the sale was void, all the machinery on the land is subject to the claim of the holder of the trust deed, and Rouse cannot impair his security by removing the improvements from the land. *Meyers* v. *Buchanan*, 46 Miss., 397. Appellee claimed the right to remove the machinery under contract between himself and Kuhn because

Kuhn was a tenant of B. Ruttenburg. Kuhn should have removed the machinery during his tenancy in order to avail himself of that right. His tenancy expired when the sale was made. 2 Kent, 420–425. But this is a claim of a stranger seeking to remove property which has become a fixture upon the land of another. The strict rule as to fixtures applies between vendor and vendee and mortgagor and mortgagee. 2 Kent, 424; *Stillman* v. *Hamer*, 7 H., 421; *Terry* v. *Robins*, 5 Smed. & M., 291; *English* v. *Foote*, 8 Smed. & M., 444; *Richardson* v. *Borden*, 42 Miss., 71; *Wethersby* v. *Sleeper*, 42 Miss., 732. Fences, a gin stand and a sawmill and grist mill become fixtures because necessary to the improvement and successful operation of the farm. *Emrich* v. *Ireland*, 55 Miss., 390; *Perkins* v. *Swank*, 43 Miss., 349. An agreement that a fixture shall retain the character of personal property cannot be enforced against a *bona fide* purchaser or incumbrancer of the realty having no notice of the agreement. *Tibbits* v. *Horne*, 23 Am. St. Rep., 31; *Powers* v. *Dennison*, 30 Vt., 752 *et seq.*; *Davenport* v. *Shants*, 43 Vt., 546; *Prince* v. *Case*, 10 Conn., 375 *et seq.*; *Ford* v. *Cobbs*, 20 N. Y., 344 *et seq.*; *Hunt* v. *Bay State Iron Co.*, 97 Mass., 279 *et seq.* (30 Am. St. Rep., 34); *Fifield* v. *Farmers' National Bank*, 39 Am. St. Rep., 166. In the case of *Duke* v. *Shackleford*, 56 Miss., 552, Duke had notice of Shackleford's claim.

*Chas. Scott* and *E. H. Woods*, for appellee.

Machinery placed on land by a tenant remains personal property, even where there is no agreement or contract between the tenant and the party from whom the machinery was purchased. *Weathersby* v. *Sleeper*, 42 Miss., 732; Thompson on Trials, p. 16; *Bartlett* v. *Haviland*, 92 Mich., 552; *Scudder* v. *Anderson*, 45 Mich., 126; *St. Paul Furniture Co.* v. *Saur*, 63 N. W. Rep., 110; *Tift* v. *Horton*, 53 N. Y., 377. "The law annexes to such sale the right in the purchaser to recover possession of his property upon default made, even against subsequent *bona*

*fide* purchasers for value without notice." *Duke* v. *Shackle-ford,* 56 Miss., 552.

COOPER, C. J., delivered the opinion of the court.

In May, 1892, one B. Ruttenburg, the owner of certain lands, executed a deed of trust thereon to secure to the Equitable Mortgage Company the payment of certain notes, amounting, in the aggregate, to about the sum of nine hundred dollars. The deed contained a stipulation that "all machinery now upon, or which may be hereafter put upon said premises, whether attached or detached," should be covered by its provisions. This deed was recorded in the proper office, on June 14, 1892. Ruttenburg died prior to December 20, 1893, on which day his heirs at law leased the lands to one Kuhn, for the period of ten years, beginning January 1, 1894, at a rental of two hundred dollars for the year 1894, and three hundred dollars for each subsequent year. These payments were to be applied by the tenant to the discharge of the debts due by Ruttenburg, including the incumbrance on the land above noted.

In the year 1894, Kuhn bought from the appellee, Rouse, the engine, boiler and other machinery, the subject-matter of this suit, and located upon the lands described in the deed of trust. Rouse retained title to the property until the purchase money should be paid.

On the eleventh day of February, 1895, one Holloway, claiming to have been duly appointed as substituted trustee in the deed, having advertised the lands as provided in the deed, offered the same for sale, and sold and conveyed them to one Armistead. At this sale the attorney of Kuhn offered to pay to the trustee the whole amount of the mortgage debt, provided the trustee would deliver up the notes evidencing the same. But the trustee, while willing to accept the money, did not have the notes with him, and Scott, the attorney, declined to pay the money until they were produced and surrendered.

The trustee, therefore, proceeded with the sale, and Scott, as attorney for Kuhn, gave notice to the persons present that the validity of the sale would be contested by Kuhn. We infer, from the record, that the appellant, Polle, was placed in possession of the property as the agent or representative of Armistead, the purchaser. How the appellant got possession of the machinery is not made to appear; but so it is he was found in possession, and Rouse, the seller, brought this action of replevin to recover the property, claiming the same by reason of the reservation of title in the contract of sale to Kuhn.

It is conceded by counsel for the appellant that, as between Rouse and Kuhn, Rouse could recover; but it is contended that he cannot recover as against Polle (1) because the machinery has been so attached to the land as to become a fixture as in favor of the holder of the notes secured by the deed of trust, and, if mistaken in this, then (2) that Armistead was a *bona fide* purchaser of the land at the trustee's sale, and, as to him, the machinery, which was then on the land, was a fixture.

There is no merit in either contention. It is true the deed of trust contains a stipulation that all machinery on the land at the time of its execution, or that might thereafter be placed on it, "attached or detached," should be bound by the deed. But this provision, whether so intended or not, could apply only to the property of Ruttenburg, the grantor in the deed. If Kuhn had been in possession of the land as tenant thereof at the time this deed was executed by Ruttenburg, and had then, for the purposes of his tenancy, already placed the machinery on the land, it could not be plausibly argued that the landlord could, by a mortgage of the land, have bound the property of the tenant. He could not have taken it himself, and one buying from a landlord or accepting an incumbrance must take notice of the legal rights of a tenant in possession of the land. So far as the controversy is looked at in the light of the conflicting claims of the Equitable Mortgage Co. and Rouse, the case is far stronger in his favor than that of *Duke* v. *Shackleford*, 56

Miss., 552. The Equitable company was not a purchaser either of the machinery or of the land on which it was located, and, as against its right to the machinery would stand opposed the rights of the tenant, Kuhn, and to protect tenants the rules of the law hold many articles—which, as against all other persons, would be considered as fixtures—to remain chattels. It is unnecessary to refer in this phase of the case to authorities in other states; our own decisions cover and control it.

But it is said by counsel for appellant that Polle may protect his possession by invoking the title of Armistead, who was a *bona fide* purchaser of the land at the trustee's sale, without notice of the rights of Kuhn, the tenant, or of Rouse, who sold him the property, and on this point it is said that the declaration of Chalmers, J., in *Duke* v. *Shackleford*, that the seller of personal property which is fixed to land by the buyer may recover it where there has been a reservation of title, "even as against subsequent *bona fide* purchasers for value and without notice," is dictum.

The first inquiry which is to be made is whether there is anything in the record to show that Armistead is a purchaser of the property, either in good or bad faith, and, on this preliminary question, it is evident that he is not. By the deed of trust executed by Ruttenburg to secure the debt to the Equitable Mortgage Co., the lands were conveyed to one P. M. Harding, as trustee, with power of sale if default should be made in payment of the secured debt. The deed provided that, in event of the death, removal from the state, failure, refusal to serve or disqualification of the trustee, then the Equitable Mortgage Co, "by its president or vice president, its successor or assigns, or other legal holders of the notes by this deed secured, shall have full power to appoint, by a duly executed deed of appointment, duly recorded in the county in which the land herein described is situated, a trustee in place of said party of the second part."

There is no evidence in the record of the appointment of

Holloway, the substituted trustee, other than that contained in the recital of the deed made by him to Armistead, which recital is that Harding, the trustee, refused to act, and so notified C. H. Raine, the owner of the notes secured by the deed, and that thereupon Raine, "in writing," had appointed Holloway as substituted trustee. Manifestly, an appointment "in writing" is not the lawful exercise of a power required to be executed by "a duly executed deed duly recorded." Hill on Trustees, 177–185; *Bonner* v. *Lessly*, 61 Miss., 392; Perry on Trusts, § 287. Mr. Armistead, by his conveyance from Holloway, acquired nothing except the equitable right of substitution to the debt discharged by the money he paid.

*The judgment is affirmed.*