| 64 | 159 |
| 93 | 481 |
| 64 | 159 |
| 100 | 79 |

## McEwen *vs.* Springfield *et al.*

1. In a suit by a widow for damages for the homicide of her husband, the defendants are competent witnesses in their own behalf.
2. It having been sought to impeach a witness both by disproving facts testified to by him, and also by proof of contradictory statements, and to sustain him by evidence of good character, it was error to limit the effect of such sustaining evidence by charging that "if a fact or facts testified to by a witness be disproved to the satisfaction of the jury, then evidence of general good character should not be treated as re-establishing such disproved facts."
3. If two or more persons conspire together to do an unlawful act of violence on the body of another, and they embark in the execution of such purpose, the law would not protect each against the consequences of the other's not strictly observing the bargain; each must contemplate that before joining with his fellow to break the law, and each becomes responsible for the worst act done and the greatest damage caused by any of his fellows, if done in pursuance of the unlawful purpose.

Witness. Evidence. Before Judge McCutchen. Whitfield Superior Court. April Term, 1879.

To the report contained in the decision it is only necessary to add the following : The evidence for plaintiff tended to show the following facts : There was bad feeling between McEwen, the deceased, and the Springfields; the immediate quarrel arose in Springfield's grocery at night about buying some bitters; both of the Springfields advanced towards McEwen, and he went out of the door. Robert Springfield was held by a by-stander, the other defendants, except Horn, following McEwen ; Horn came up with a knife, and told the by-stander to let Robert go, and when this was done, they too followed McEwen. In a few minutes he was killed, being both shot and cut with a knife. Horn was examined for the plaintiff by interrogatories ; he stated that he heard the pistol shot and ran up to where the party was; that Hugh Springfield got up from a stooping position over the body and appeared to close a knife; that he heard them say that Bob Springfield had shot McEwen ; that Hugh told Bob to go to his house and get his horse and leave, as he had killed McEwen, and he himself went and closed up his grocery.

The evidence for the defendants was to the effect that McEwen had been drinking, and that all of them were seeking to get him home and to prevent a difficulty, except Robert Springfield and Horn, the first of whom did the shooting and the latter the cutting.

WARNER, Chief Justice.

The plaintiff sued the defendants, Robert Springfield, Hugh Springfield, T. J. Smith, jr., Thomas S. Horn, and W. C. Quinn, to recover damages for the killing of her husband. On the trial of the case, the jury, under the charge of the court, found a verdict in favor of the plaintiff for $2,226.00 against Robert Springfield, and found in favor of the other defendants, except Horn, who had not been served. The plaintiff made a motion for a new trial on the following grounds :

1. Because the verdict is contrary to law, contrary to the evidence, strongly and decidedly against the weight of the evidence, and against the principles of equity and justice.

2. Because the court erred in ruling, over plaintiff's objection, that the defendants, Hugh Springfield, T. J. Smith, jr., and W. C. Quinn, might testify as to all that Mrs. McEwen, the plaintiff, had testified about, and permitted them to testify fully as to their version of the homicide as set out in the brief of the evidence—plaintiff objecting to all of said testimony.

3. Because the court, after charging the jury as to the right of a widow to recover for the homicide of her husband, and instructing them as to the measure of damages— to which no objection is made—charged as follows, viz: "If either or any of the defendants unlawfully and feloniously slew the deceased, then any or such of them as did the act, or participated in it, would be liable in damages according to the measure I have given you. Such of them, if any, as neither did the act, nor participated in and promoted it, would not be liable. And again, if such killing occurred in pursuance of such conspiracy, then all, or any such as had joined in or become parties to that conspiracy, would be liable in damages, according to the measure I have given you; but such of the defendants as did not join or become parties to such conspiracy would not be liable for consequences of the same. Conspiracy here referred to need not be such as expressly contemplated a killing of the deceased. If there was a conspiracy, and the purpose of it any unlawful attack on the person of McEwen of any kind, even if only an assault and battery, and from that all the way up to murder, this would be sufficient. The principle is this: If two or more persons conspire together to do an unlawful act of violence on the body of another, and they embark in the execution of such purpose, the law would not protect each against the consequences of the other's not strictly observing the bargain; each must look out for that before joining with his fellow to break the law, and each becomes

responsible for the worst act done, and for the greatest damage caused by any of his fellows, if done in pursuance of the unlawful purpose. The doctrine of conspiracy, as before stated, would only apply to those who conspired, and if there was no conspiracy, then the principle would not apply at all."

This is the entire charge given in relation to the several defendants being responsible for the acts of any of the others. This charge, as a whole, plaintiff says was erroneous, and a new trial should for this error be granted.

4. Because the court failed to give in charge as the law applicable to the facts of this case though he was not specially requested so to do, either orally or in writing, but plaintiff's counsel in his argument before the court and jury had insisted that such was the law, viz: That the killing of the plaintiff's husband was the joint action of two or more of the defendants, each would be liable who may have concurred in the act of the one killing. If the evidence shows that defendants, or any of them, acted in concert, either directly or indirectly in the commission of the trespass on McEwen, or contributed to such act, then all who so acted in concert, or contributed directly or indirectly thereto, would be liable in damages for the act done.

5. Because the court, after charging in substance sections 3872 to 3875 of the Code, added: " If a witness be impeached by both methods, that is by disproving the facts testified by him, and by proof of contradictory statements, and he be supported by other witnesses who testify to his general good character and that he is worthy to be believed, then the jury should understand such evidence as supporting him to be judged of by the jury, in respect to the contradictory statements, but that it is inapplicable as far as relates to the evidence by which a fact or facts he may testify to is disproved, if any. Or in other words, a witness impeached by proof of contradictory statements made by him, should be treated as having his credit restored by satisfactory proof

of general good character. But if a fact or facts testified to by a witness be disproved to the satisfaction of the jury, then evidence of general good character should not be treated as re-establishing such disproved facts. But the question as to whether there be any fact or facts disproved, and if so, what facts. is, like other similar matters, for the jury to determine, and you are to judge of the extent and the consequences of such discrepancy, if any, or of the explanation of the same, if any." This charge, as a whole, plaintiff insists was erroneous, and was calculated to mislead the jury, and such as should entitle her to a new trial.

6. Because the court erred in giving in charge this written request of defendants' counsel, viz: In the absence of proof of what the Texas law is, the presumption is that the common law prevails in Texas, and, by that law, there is no authority compelling a witness to answer interrogatories coming from another state. Horn could not have been compelled to answer these interrogatories..

7. Because when plaintiff's counsel, in his argument before the jury, was calling attention to the testimony of Dr. Cochran, taken by interrogatories, and returned into court 2d October, 1877, (being the second day of the term) in which testimony the doctor expressed the opinion that the cut on McEwen's neck was made immediately before or after the shot, and probably afterwards, because there was very little blood about this cut, and said counsel was arguing that this testimony corroborated Horn, and on this account the presentment against Horn, made at October term, 1877, was a movement on part of defendants to shift the blame of the cutting on Horn, who was absent, the court, at the instance of defendants' counsel, arrested plaintiff's argument and refused to permit him to argue anything on this account unfavorable to Hugh Springfield, as it did not appear by the evidence that he had anything to do with the presentment, but ruled that said counsel might argue this question so far as it might affect the defendants Smith and Quinn, because their names appeared

indorsed as witnesses on the presentment, but Hugh Spring-
field's did not. This restriction by the court of the range
of argument of plaintiff's counsel, plaintiff insists was error,
the more especially as plaintiff's testimony showed circum-
stances tending pretty clearly to prove that Hugh made
the cut on McEwen's neck; and this was a point stoutly
contested on both sides. Plaintiff insists that this conduct
of the court was well calculated to impress the jury with
the idea that the court thought Hugh not guilty of the
cutting.

As to the complaint made in the seventh ground the
judge says: There was nothing new in the testimony of
Dr. Cochran relative to the absence of blood at the knife
wound. The fact was known at the inquest, and to all the
parties. When Mr. Shumate raised the point, the court looked
at the Horn indictment, and not finding the name of Hugh
Springfield marked on it either as witness or prosecutor,
asked Judge Walker to call attention to any evidence either
showing or tending to show that said Hugh instigated the
Horn prosecution. He replied, there was not any. The
court then remarked that nothing could be claimed unless
there was some evidence to support it. The court made
no intimation that Hugh did not do the cutting.

The motion for a new trial was overruled by the court,
and the plaintiff excepted.

1. There was no error in allowing the witnesses Spring-
field, Smith, and Quinn, to testify in the case, as alleged in
the second ground of the motion for a new trial. Mrs. Mc-
Ewen, who was the plaintiff and solely interested as such, had
testified in the case and had given her version of the hom-
icide of her husband, whose estate was in no way interested
in the issue or cause of action on trial. The plaintiff was
in life to confront the witnesses who were called to testify
against her, the only party plaintiff interested in the cause
of action or the issue on trial.

2. In our judgment, the charge of the court, as alleged in
the fifth ground of the motion, was error, especially the

following part of it: "But if a fact or facts testified to by a witness be disproved to the satisfaction of the jury, then evidence of general good character should not be treated as re-establishing such disproved facts." The testimony of Horn, a witness for the plaintiff, was material as to the participation of Hugh Springfield in the homicide of plaintiff's husband, and it was sought to impeach him on the ground that he had made contradictory statements in regard to it. This charge of the court, in view of the evidence in the record, was to nullify what it had previously charged as to the restoration of the credibility of the witness by proof of his general good character. The question made by the evidence in the record, was whether Horn had been impeached by having made contradictory statements in view of the testimony as to his general good character, and the effect of the charge was to tell the jury that proof of his general good character should not be treated as re-establishing his credibility. A witness impeached by proof of contradictory statements may be sustained by proof of general good character, the effect of the evidence to be determined by the jury. Code, §3875.

3. We find no material error in the other grounds contained in the motion, but reverse the judgment for error in the fifth ground.

Let the judgment of the court below be reversed.