ANN LUCY WITHERSPOON, administratrix, etc. v. THOMAS G. BLEWETT, JR.

1. TROVER AND CONVERSION—DEMAND OF PROPERTY.—In trover, if the original taking of the goods was tortious, no demand is necessary; but if they came to defendant's possession from plaintiff or a third party, and are merely detained, a demand and refusal of delivery is necessary before suit.

2. SAME—REFUSAL.—Unqualified refusal, where defendant has it in his power to deliver, though not of itself a conversion, is evidence of it; but a qualified refusal—upon reasonable grounds—as where defendant doubts the ownership or authority of the demandant, is not conversion or evidence of it. The defendant, however, will be held to good faith in the reasons he assigns for refusal to deliver.

3. EVIDENCE.—The restriction against a party testifying in his own behalf against the estate of a deceased person in a case involving over $50 (Code of 1857, p. 510, art. 190; Code of 1871, § 758), is limited to cases arising before the death of deceased, and does not apply to controversies arising with administrators.

4. CONSTRUCTION.—The court gives to a statute an interpretation broader than its words, because demanded by its spirit, reason and intendment.

5. PROOF OF CONVERSION BY DEMAND AND REFUSAL.—A refusal to deliver on demand is not evidence of conversion unless such refusal be absolute and positive.

ERROR to the circuit court of Lowndes county. ORR, J.

The opinion of the court contains a sufficient statement of the case. The following is the assignment of errors:

1. The court erred in giving the third and eighth instructions asked by the defendant.

2. The court erred in admitting the testimony of the defendant in this case, the same being inadmissible under article 190, p. 510, of the Revised Code of 1857.

3. The motion for a new trial was improperly overruled.

*Humphries & Sykes*, for plaintiff in error.

1. In an action of trover the conversion may be proved: 1st. By a tortious taking; 2d. By any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the right of the owner; and, 3d. By a refusal to give up possession to the owner on demand. Hoover v. Alexander, 1 Bail. 510. The object of demand by the plaintiff is to afford the person in possession an opportunity to deliver the property up without cost, if he has no claim thereto. 1 McCord, 429. The very denial of goods to him that has a right to demand them, is an actual conversion. 6 Mod. 212, per Holt, C. J. Where the assumption of dominion over property is in hostility to the rights of the true owner, such assumption amounts in law to a conversion. Byrne v. Brockway, 31 N. Y. 490. In trover, a party cannot avail himself, by an instruction, of a want of demand by the other party, unless it is expressly set up by way of defense accompanied by a tender. Nor can he defeat a recovery by showing title to the property converted in persons other than the plaintiff, without connecting himself with that title. Raithall v. Dezelter, 43 Mo. 145; Weymouth v. Chicago, etc. R. R. Co., 17 Wis. 550.

2. In trover for goods which are in the custody of an unincorporated company, it is not necessary to show a

demand of the goods from a partner, and a refusal by him. It is enough to show a demand from, and a refusal by, the person allowed by the partnership to manage their business. 3 Rob. Pr. 464. The same principle is applicable to the case at bar.

3. The testimony of the defendant in the court below was clearly inadmissible. "No person shall be a witness in any court, by or against himself, to establish his own claim to an amount exceeding fifty dollars against the estate of a deceased person." Rev. Code 1857, p. 510, art. 190; Griffin v. Lowen, 37 Miss. 458; Haralson v. White, 38 ib. 178; Lamar et al. v. Williams et al. 39 ib. 342.

SIMRALL, J.:

This is an action of trover, brought to recover damages for the conversion of cattle. It was incumbent on the plaintiff to prove property in the estate, of which he was the legal representative, and secondly, a conversion by the defendant.

On the first point, the evidence was, that the cattle, when appraised as the property of the intestate, were upon his plantation, and were pointed out to the appraisers by William Witherspoon, brother of deceased, and who seemed to have the management of the plantation since his brother's death. Some time after the appraisement, the cattle were driven to the plantation of defendant, after Miss Ann Witherspoon had moved to town to live with her sister, the wife of the defendant. Dr. Toof stated that he thought or believed, but was not positive, that all the cattle on defendant's plantation were his property, and that William Witherspoon was agent for his sisters, and also the plaintiff, in the years 1855–'56–'57.

The defendant testified that the cattle were brought to his plantation by the order of Miss Ann Witherspoon, who paid "Laura" for them. That a demand

was made upon him to deliver them up, by one Clana-
han, who had a note from the plaintiff. " He did not
deliver the cattle, although on his plantation, because
they were not there by his direction, nor in his posses-
sion, but they were in the possession of Miss Ann With-
erspoon, and that he could not take authority or con-
trol over them, except by her direction." He also said,
if the plaintiff would make affidavit that he had prop-
erty on his premises, he could take it away.

It may be assumed that the testimony is sufficient to
establish property in the plaintiff as administratrix.

Has there been a conversion? If the taking of the
goods in the first instance was tortious, no demand is
necessary, but where the goods have come to the de-
fendant's possession, from the plaintiff or a third per-
son, and he simply detains them, in such case a demand
and refusal is necessary to perfect the plaintiff's title
to recover. Baldwin v. Cole, 6 Mod. 212; McComble
v. Davis, 6 East, 538 ; 3 Phill. Ev. 540. A tortious
taking implies hostility and defiance of the plaintiff's
right, and indicates a purpose to apply the thing to the
defendant's use. But where the acquisition of the pos-
session, is not in such circumstancse as asserts a claim
to the thing in the defendant, or a repudiation of the
plaintiff's pretensions, the defendant ought, before suit
brought, to have an opportunity of explaining his pos-
session so that he may answer whether he sets up a
claim of property in himself, and adversely to the plain-
tiff, as he may respond to the demand for the goods; he
may or may not, according as he answers, furnish evi-
dence of a conversion. An unqualified refusal is not of
itself a conversion, but evidence of it, if the defendant
had it in his power to deliver up the goods. But if the
refusal be put upon reasonable grounds, as that the de-
fendant is not satisfied who is the real owner, or that
the person making demand has not authority from the
person he represents, in these and such like cases a

refusal comes short of proving a conversion. Green v. Dunn, 3 Camp. N. P. C. 215, *n;* Watt v. Potter, 2 Mason, 77 ; Jacoby v. Lampatt, 6 Serg. & Rawle, 300.

The defendant must be held to good faith, and should be confined to the reasons which he assigns. Equivocation or evasion will not be tolerated. Ingalls v. Bulkley, 15 Ill. 225; Holbrook v. Wright, 24 Wend. 169.

Was the refusal of the defendant absolute, or was it placed upon grounds negativing the idea of a conversion of the cattle to his own use ? The cattle were not taken from the premises of the plaintiff's intestate by defendant or his order. They were brought on defendant's plantation by direction of Miss Ann Witherspoon, who paid for their keeping. In the removal of them then the defendant was not a trespasser, and it was altogether proper that he should be applied to, to give them up before suit brought. Were the grounds of refusal reasonable ? If the claimant would satisfy him of ownership, by making affidavit of the fact, or if Miss Witherspoon, who placed the cattle on his premises, and under whose control they were, would consent and so direct, then the plaintiff could take them. In Jacoby v. Lampatt, 6 Serg. & Rawle, *supra,* the refusal was accompanied with the condition that if the claimant would make reasonable proof of ownership, he would surrender the goods. Such refusal was held not to warrant the inference of conversion. Here the defendant, Blewitt, professed a willingness to surrender on an affidavit simply of ownership. Being bailee for Miss Witherspoon, it would seem to be fair that she should be consulted before the cattle were surrendered. Blewett set up no claim adverse to the plaintiff, disclaimed title in himself, had not appropriated the property to his own use, and was holding possession as *agister* of cattle for another. We do not think the evidence of force enough to prove a conversion. It might be quite enough to

sustain the action against Miss Witherspoon, who drove or caused the cattle to be driven from the plantation of the intestate, and placed on the farm of the defendant to be supported. This would seem to be a tortious taking and asportation.

The evidence might warrant a recovery in the action of *detinue*, where the points to be proved would be, property in the plaintiff and detention by the defendant.

Blewett was objected to as an incompetent witness, because he was proposed to testify to facts which tended to relieve him from liability to the estate of plaintiff's intestate. Article 190, p. 510, of the Code of 1857, was expounded in the cases of Griffin v. Mixon, 37 Miss. 458; Lamar v. Williams, 39 ib. 347, and Faler v. Jordan, 44 ib. 289. These cases declare the policy of the statute to be, that "a living party, plaintiff or defendant, in a suit in which the representative of a decedent is a party, is not competent to establish his right or demand" against the estate. Nor does it matter whether the "claim" be set up by the living plaintiff against the estate, or whether it be by way of defense to a "claim" preferred by the legal representative of a decedent. The manifest reason for the exclusion of such witness is to shut out *ex parte* evidence touching matters and transactions which transpired in the lifetime of the deceased, after death has sealed the lips of one of the parties, so that his version and explanations and statements cannot be heard. It was, too, to prevent the establishment of false and simulated claims, by such *ex parte* and interested testimony, against estates.

But, does the reason and spirit of the proviso to the section apply where the facts to which the witness testifies arose after the intestate's death, touching, too, a cause of action which had its inception posterior to his death? The interpretation put upon the statute is broader than its words, but was demanded by its reason and intendment. Thus much is plain; if the suit be for a

tort or a contract done or made in the lifetime of the intestate, the survivor is incompetent to prove the one or the other against the estate; so, if he is sought to be charged by the administrator with either, he cannot testify in his discharge.

The wrong and injury complained of by the plaintiff, were committed after her intestate's death, and her possession as administratrix was invaded; against her right as such legal owner, was the conversion commited by the defendant. All the parties connected with the transaction, as owner and wrong-doer, are living persons. The administratrix, as owner of the cattle, caused a "demand" to be made of the defendant; the matters about which he was permitted to testify, connected themselves with the demand, his response thereto, the character of his possession, how acquired, and how held. If the controversy had been exclusively as to the title of the estate to the property, the witness would have been incompetent to show title out of the intestate, for that would have embraced matters occurring in the lifetime of decedent. The plaintiff and the defendant were both competent to respond as witnesses, touching the matters of defendant's examination. Such testimony does not come within the mischief which the statute guards against.

If an administrator sues upon obligations given for property sold by him, or to enforce the statutory mortgage, it would seem that the reason why the parties are excluded does not apply. Following in the line of the liberal exposition which has been given to the statute, we have been brought to the conclusion that, when no cause of action existed in the lifetime of the deceased, but originated afterwards, either for or against the estate, the parties to the suit are competent witnesses as to those matters which originated after the intestate's death. In order to quiet doubts on this point, the Code of 1871, § 758, allows such interested persons to testify,

"in support of a demand against an estate, which origi-
nated after the death of such deceased person, in the
course of administering the estate." This, because the
administrator or executor may be supposed to be conver-
sant with such demands; and the reason for the exclu-
sion, where the cause of action existed in intestate's
lifetime, has no force.

We think the third instruction propounded the law
correctly. There is some obscurity in the eighth
charge, as read in the record, perhaps it may be inaccu-
rately transcribed. A demand is not necessary where
the property has been tortiously taken from the plain-
tiff's possession. We have already said, that it was
necessary in this case to prove a demand. The terms
of this instruction, if we understand it aright, are too
broad. The verdict, however, we think is right, on
the evidence.

*Judgment affirmed.*