ABELEIN v. PORTER et al.

(Supreme Court, Appellate Division, Fourth Department. November 27, 1899.)

WRONGFUL DEATH—WITNESSES—EVIDENCE—ADMISSIBILITY.
    Code Civ. Proc. § 829, declares that a party interested in an action shall not be examined in his own behalf or interest, as against the executor, administrator, or survivor of a deceased person, concerning personal transactions or communications between witness and such deceased person. *Held*, that where deceased had been assaulted by defendant, and was drowned while attempting to escape arrest, defendant, in an action by deceased's administrator to recover for his wrongful death, was not entitled to testify as to the facts and circumstances attending the assault, including conversations with and statements by deceased, occurring as part of that transaction.

Appeal from trial term, Onondaga county.

Action by Margaret Abelein, as administratrix, against Louis D. Porter, impleaded with John Funda. From a judgment for defendant Porter, and from an order denying a new trial, plaintiff appeals. Reversed.

This action is brought to recover damages claimed to have been sustained by the next of kin of one Charles Hausman, deceased, whose death, it is alleged, was caused by the wrongful acts of the defendant. Hausman was a lad about 17 years of age, who resided in the city of Syracuse, and the evidence tends to show that he was detected by the defendant in the act of stealing a quantity of lead pipe; that the defendant thereupon attempted to arrest him; that Hausman, in order to escape arrest, crawled feet first into a firehole in a salt block; that, upon discovering Hausman in this position, the defendant kicked him several times. and then, pulling him out of the hole, kicked him again; that the deceased thereupon started to run, and was pursued by the defendant, who was shortly joined by a policeman; that while talking with the policeman the defendant saw Hausman running towards a canal boat on the Erie Canal, upon which he attempted to secrete himself; that shortly thereafter the defendant and the policeman started for the boat, whereupon Hausman dropped over on one side, clinging to the boat with his hands, in which position he was discovered by the policeman, who made an effort to reach him, but in resisting this effort Hausman dropped into the canal, and, after taking a few strokes,

sank beneath the surface of the water, and was drowned. The evidence also tends to show that the deceased was an expert swimmer, and that, after his body was recovered from the canal, bruises and abrasions were discovered in various parts thereof. Upon the submission of the case the jury were instructed by the learned trial judge that if the defendant, by the use of excessive force, gave Hausman reason to apprehend and fear that, if caught, he would again be violently assaulted, and that if, because of such fear, he dropped into the canal, and was drowned, the plaintiff might recover. The jury thereupon rendered a verdict in favor of the defendant.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

Frank C. Sargent, for appellant.
G. H. Stillwell, for respondent.

ADAMS, J. Upon the trial the defendant was permitted to testify to the entire transaction between himself and the plaintiff's intestate from the time the latter was first discovered with the lead pipe in his possession until he was drowned, and in the course of his testimony the defendant not only denied kicking the boy, but detailed his conversation with him, and all that was said and done. This class of evidence was duly objected to as incompetent under section 829 of the Code of Civil Procedure, but the objection was overruled, to which ruling an exception was taken. Subsequently a motion was made upon the same ground to strike out the evidence, which was denied, and to such denial a further exception was taken; so that the competency of the evidence is fairly and squarely presented by the record. There can be no question, we assume, that within the language of the Code, which declares that "a party or person interested in the event [of an action]  *  *  * shall not be examined as a witness in his own behalf or interest *  *  *  against the executor, administrator or survivor of a deceased person  *  *  *  concerning a personal transaction or communication between the witness and the deceased person" (Code Civ. Proc. § 829), the evidence objected to was incompetent, for it related to both a communication and a transaction between the defendant and a deceased person. It was given in behalf of the defendant, and it was against an administrator. But, while virtually conceding this to be so, it is contended by the defendant that the inhibition of the statute has no application to this particular case, the argument being that inasmuch, as a cause of action arising out of the death of one person by reason of the wrongful or negligent acts of another (Code Civ. Proc. § 1902) is not given to the estate of a deceased person for the purpose of general administration, but for the exclusive benefit of a husband, wife, or next of kin, the plaintiff is not an "administrator" in the ordinary acceptation of that term, but simply a trustee for a certain specified purpose. It is true that an action of this character is prosecuted for the benefit of certain persons to whom any recovery is, by direction of the statute, to be distributed (Code Civ. Proc. § 1903); but the sum recovered therein would nevertheless be subject to the expenses of the action, as well as those of the administration, and for this reason, if for no other, there is "nothing  *  *  *  to take the case out of the ordinary

course of administration" (Quin v. Moore, 15 N. Y. 432–434). But whether the functions of an administrator, as respects an action of this nature, be general or limited, he is in fact the personal representative of his intestate, and consequently the novel proposition which is here advanced by the defendant must, we think, be founded upon a misapprehension of the real purpose for which the inhibiting statute was enacted. It was not until a comparatively recent period of time that parties to an action were permitted to testify in their own behalf; and when the barriers were removed, and the right to testify was conferred, the legislature, in its wisdom, saw fit to surround this new privilege with certain safeguards, among which was the one embraced within section 829 of the Code. The design of this restrictive statute is manifestly to deprive a surviving party to a transaction of the unfair advantage which he would gain by giving his version of a controversy when the other party is prevented by death from being heard to contradict or explain the same, and that such was the main purpose and policy of its enactment has been repeatedly declared by the courts in language too plain to admit of any misunderstanding. Thus, in Card v. Card, 39 N. Y. 317–319, it was said:

"The restriction in question is intended to prevent the party from testifying to the personal act, declaration, or conversation of the deceased. These are matters which, if he were living, he might explain, qualify, or contradict."

Again, in Holcomb v. Holcomb, 95 N. Y. 325, it was said that:

"The words of exclusion are as comprehensive as language can express. Transactions and communications embrace every variety of affairs which can form the subject of negotiation, interviews, or actions between two parties. * * * A contrary rule would defeat the reasonable intent of the statute that a surviving party should be excluded as one interested from maintaining by his testimony an issue which in any degree involved a communication or transaction between himself and a deceased person."

And in a still more recent case the same court, in reiterating the language last quoted, took occasion to declare with much emphasis that:

"The object and purpose of this statute is so obvious as not to require or justify any explanation or consideration beyond that which it has repeatedly received from this court." Heyne v. Doerfler, 124 N. Y. 505–509, 26 N. E. 1044.

Many other like statements of the reason for the rule might be cited, but those already adduced are sufficient, we think, to show that it is the settled policy of the law of this state to exclude in all cases in which the representatives of a deceased person are parties the testimony of an interested witness concerning any transaction with the deceased in which the witness in any manner participated. Indeed, so rigidly has this policy been adhered to that the courts have uniformly, of late, refused to receive evidence of this character which tended even indirectly to prove such a transaction. Hall v. Roberts, 63 Hun, 478, 18 N. Y. Supp. 480; In re Humfreville, 6 App. Div. 535, 39 N. Y. Supp. 550. Likewise, in cases where an administrator avails himself of his right to testify to a transaction between his intestate and the opposite party, it is held that the latter, in replying thereto, must confine himself to evidence of the same trans-

action. Martin v. Hillen, 142 N. Y. 140, 36 N. E. 803; Rogers v. Rogers, 153 N. Y. 343, 47 N. E. 452. Now, if it be conceded—as clearly, it must be—that the policy of the statute is to prevent an interested party from maintaining by his own testimony an issue which involves a communication or transaction between himself and a deceased person, as against the personal representatives of the latter, no sufficient reason suggests itself why the rule should not be applied to every action brought by an administrator, without reference to the disposition to be made of the recovery in case one is had. In other words, if the personal representatives of a deceased party seek to recover damages for the benefit of some particular person or class of persons, the defendant should not be permitted to gain any advantage by his testimony which would not be accorded him if he were defending an action brought in behalf of all persons interested in the decedent's estate; for it is as clear as "language can express" that the inhibition of the statute is general, and not limited in its application. As was said by Rapallo, J., in the case of Alexander v. Dutcher, 70 N. Y. 385, it "prohibits all parties to actions from testifying to personal transactions with a deceased person against his executor, etc., and makes no distinction when parties are called as witnesses on their own behalf or in behalf of a co-defendant, or cases where they are jointly and severally liable."

While the precise question which is here presented has not been subjected to frequent adjudication, there is ample authority to support the plaintiff's contention that this class of evidence is clearly incompetent. In Forbes v. Snyder, 94 Ill. 374, it was held that in an action by the personal representatives of a deceased person to recover compensation for the wrongful killing of the intestate by attacking and shooting him the defendants were not competent witnesses to prove matters which occurred between them and the deceased prior to the killing; and this doctrine was again asserted by the same court in Machine Co. v. Keifer, 134 Ill. 481, 25 N. E. 799, 10 L. R. A. 696. It has also been enunciated by the supreme court of Indiana (Sherlock v. Alling, 44 Ind. 184; Hudson v. Houser, 123 Ind. 309, 24 N. E. 243), and, inferentially at least, by the court of appeals in this state (Quin v. Moore, supra). In the case last cited, as in this, the person killed was a minor, whose only next of kin was his mother; and it was said by Comstock, J., who delivered the opinion of the court, that:

"The statute declares that the action shall be brought in the name of the 'personal representative,' and that the amount recovered shall be 'distributed to the widow and next of kin,' as provided by law in cases of intestacy. The mother' was not, therefore, 'immediately' entitled to receive the money which might be recovered. It would belong to her ultimately, but she could only take it from the hands of the administrator, as in other cases. The fund would first be subjected to the costs of the suit and of administration, and she would take whatever might be left. I see nothing, in short, to take the case out of the ordinary course of administration. * * * Indeed, if the deceased child in this case had possessed other estate to be administered upon, the whole fund would belong to [the mother], and the law, I am confident, would not distinguish, for any purpose, between the part of it now in question and the residue."

We are unable to see why, in principle, this case is not decisive of
the one under consideration. Our attention has been directed to
some decisions of courts in other states, which, it is claimed, sustain
a different doctrine; but it will be found upon examination that
they are cases in which the right of action is given by statute di-
rectly to the beneficiary, and that the defendant's right to testify
in his own behalf was put upon the ground that the damages to be
recovered would not fall into the body of the decedent's estate for
distribution by the administrator. Mann v. Weiand, 81 Pa. St. 256;
Wallace v. Stevens, 74 Tex. 559, 12 S. W. 283; McEwen v. Spring-
field, 64 Ga. 159. The case which probably makes the nearest ap-
proach to an authority in support of the defendant's contention is
that of Hale v. Kearly, 8 Baxt. 49, in which it was held that a widow,
who had brought suit in the name of her husband's administrator,
he refusing to act, was a competent witness in her own behalf to
prove the circumstances attending the killing of her husband. This,
it is hardly necessary to suggest, involves a very different question
from the one here presented, and one which arose out of a provi-
sion of the Tennessee statute which gives the next of kin a right of
action in cases of this character. Laws Tenn. 1871, c. 78; Code,
§ 2292a. But even did it go to the extent claimed for it, we should
not regard ourselves at liberty to follow it in the face and eyes
of our own statute, which declares unequivocally that a party shall
not be examined as a witness in his own behalf against an executor
or administrator. We think it was error to admit the evidence ob-
jected to, and that such error was so prejudicial as to require a new
trial.

Judgment and order reversed, and a new trial ordered, with costs
to the appellant to abide the event. All concur.