REYNOLDS, et al. *v.* SNOWDEN, A MINOR, BY NEXT FRIEND

No. 40370          January 28, 1957          92 So. 2d 232

*Huff & Williams,* Meridian, for appellant, Estate of George Benison, Deceased.

*Ethridge, Minniece & Bourdeaux,* Meridian, for appellants, Junior Reynolds and Mrs. Beverly C. Rawlings.

*D. W. Williamson, J. Paul Abston,* Meridian, for appellee.

ETHRIDGE, J.

Appellee, Mrs. Betty Snowden, was injured while riding as a passenger in a taxicab owned by appellant-defendant, Beverly C. Rawlings, and driven by appellant-defendant Junior Reynolds. The taxicab was being driven west on Highway 80 about two miles west of the city limits of Meridian. At the same time George Benison was driving west on the same highway in a Mercury automobile and at a high rate of speed. He ran into the rear of the taxicab and was killed in the accident. Bertha Benison, his administratrix, was made a party defendant. Mrs. Snowden was injured in the collision. She brought this suit in the Circuit Court of Lauderdale County against Reynolds, Rawlings and Bertha Benison, administratrix. The jury returned a verdict in her favor against all defendants for $8,500. From the judgment based thereon, the three defendants have appealed.

There were only two living eye-witnesses to the accident. Junior Reynolds testified as an adverse witness. The accident occurred on September 5, 1955 shortly after noon. Reynolds said that he was driving west on Highway 80 at about forty-five miles an hour, within the highway speed limit. Mrs. Snowden, a passenger, was sitting on the front seat with him. She was going home. He saw an automobile about a quarter of a mile behind him, "and the next thing I knowed, whenever I woke up, I was looking you in the face up there at Anderson's Hospital." The Mercury driven by Benison was going as fast as it could go, about one hundred miles an hour or better.

The road was straight, with visibility good for a considerable distance to the rear and to the front of the taxicab and of Benison's Mercury. There were no other automobiles in this area at that time, and Benison "had exactly a distance of a mile and a half to pass me on the left." The force of the collision knocked the taxicab about eigthy feet. Reyonlds' taxicab, a new Chevrolet, was on the right side of the highway, and there was plenty of room for Benison to pass it. It was hit directly in the center of its rear end. Reynolds said that he saw through his rearview mirror the Benison car approaching at a high rate of speed, about a quarter of a mile back. That was the only time he observed it, because the next thing he remembered was hearing the noise followed by the collision. Asked how much time elapsed between the time he saw the Benison car in his rearview mirror and the time he was hit, Reynolds said it was "no longer than I could just glance through the mirror and take my eyes out of it," just an instant. He was severely injured, staying in the hospital eight days.

Plaintiff, Mrs. Betty Snowden, testified. Counsel for Benison's administratrix objected to her testimony, on the ground that it violated Code of 1942, Section 1690, which provides in part: "A person shall not testify as a witness to establish his own claim or defense against the estate of a deceased person which originated during the lifetime of such deceased person . . . " Plaintiff's counsel conceded that she could not testify against Benison's estate, and offered her testimony solely as against Reynolds and Rawlings. The circuit court sustained the objection to Mrs. Snowden's testifying against Benison's estate, but in effect overruled the objection to her testifying against Reynolds and Rawlings, the two living defendants.

Mrs. Snowden was twenty years of age, married, and the mother of three children. She was asked on what part of the road the taxicab was traveling at the time of

the collision. She replied: "On the right, and he (Reynolds) swerved a little bit across the line as I looked up, and then I don't know what happened." She said that the taxicab, just before the collision, swerved "a little bit out of the center line," with the left wheels south thereof. The cab was going forty-five to fifty miles per hour. She was sitting on the front seat reading a comic book.

Mrs. Snowden was cross-examined by counsel for Reynolds and Rawlings. Benison's attorney objected to the cross-examination for the same reasons, and plaintiff's counsel objected to any testimony of plaintiff on cross-examination with reference to any negligence of George Benison, deceased. The court overruled these objections for reasons previously stated. She again testified that she was sitting in the taxicab on the front seat reading comic books. She never did see the automobile operated by Benison. When they were hit she had stopped reading and just looked up. Just as she looked up, "The car swerved across the south side of the center line, and then I don't know what happened." She did not know exactly how far Reynolds drove the taxicab over the center line, but the left wheels were across it. She was asked whether Reynolds blocked the road so that Benison had to run into him, and she said "I don't know."

On direct examination Mrs. Snowden stated that she was in good health before the collision and had been in bad health since; that she was down from 130 to 99 pounds; and that she was about three months pregnant at the time of the collision. She was working as a "car hop" at a drive-in cafe, averaging between $45 and $50 a week, but since the collision she had not been able to work. The trial was in April 1956. She said her first two babies were delivered after a normal period, but the third baby was born in seven months with considerable trouble in its delivery. After the collision she stayed in the hospital a week, and then within a few days had to

go back for another three days. Her hospital and medical bills were between $600-$700. Her baby was born on February 7, 1956, and weighed six pounds. It was normal except quite small.

Dr. J. S. Hickman testified that he served as one of plaintiff's physicians after the collision, and described her injuries. In brief, she was in critical condition with multiple bruises on her face, head and arms, and was in shock and threatened with abortion. Several other witnesses testified for plaintiff with reference to her injuries. It is undisputed that she was in severe shock, had multiple bruises, almost had an abortion, and had not been able to work since the time of the collision.

The only other witness who testified with reference to the facts concerning the collision was J. C. Richardson, a State Highway Patrolman. He arrived at the scene less than an hour after it occurred. Benison was still living but died shortly thereafter. Both automobiles were torn up. They were on the north side of the road, which runs east and west. The taxicab was laying on its side, and the Mercury was 50-60 yards to the west of it on its top on the shoulder of the road, eight to ten feet off and north of the pavement. Richardson said that he was able to determine the point of impact from the physical facts. The pavement is twenty-four feet wide, with the westbound lane being twelve feet. He said that apparently the taxi "was directly in the center of the right-hand lane," and the Mercury, when it collided with the taxi, had its left wheels approximately on the center line. The highway was straight and level, with a very slight incline. To the west of the scene of the collision, visibility extended for a mile, and to the east, a mile and a half. The taxicab was laying seventy yards from the point of impact, and the Mercury one hundred and twenty-eight yards from the point of impact. There was glass on the road, most of it being in the right lane. There were no skidmarks indicated on the pavement before the point

of impact. The only ones were those where the cars thereatfer swerved off the road. All of the marks on the highway were at a point west of the point of impact, with one such mark on the pavement about eighteen inches left of the center line.

Plaintiff's declaration alleged that the taxicab was being operated at a negligent, high rate of speed, and also was negligently driven over the center line of the highway into the wrong lane. It further charged that Benison was driving at an excessive rate of speed, and failed to keep a reasonable lookout, to keep his car under control, and to turn the same in passing in order to avoid the collision. All of these acts of negligence were alleged to be proximate, concurring causes of plaintiff's injuries.

██ █ Appellants Reyonlds and Rawlings were entitled to the peremptory instruction which they requested in the circuit court. The only testimony which could possibly have warranted submission to the jury of plaintiff's case against them was the statement by Mrs. Snowden that Reynolds swerved the taxicab across the center line as she looked up, with the left wheels slightly south of it, and "then I don't know what happened". Yet this testimony is wholly contradicted by the undisputed physical facts. Highway Patrolman Richardson, who arrived shortly after the accident, testified that the point of impact was apparent at the scene, and it was directly in the center of the righthand lane, where the Mercury ran into the rear of the taxicab, with the Mercury's left wheels approximately on the center line. The Mercury was traveling at a very high and unlawful rate of speed, and the taxicab was traveling at a lawful rate which was reasonable under the circumstances, 45 to 50 miles per hour. The only way Reynolds driving the taxicab could have avoided the collision was to have driven off of the highway entirely or on the left side of the road. Yet it

is undisputed that he had no opportunity whatsoever to perform either of these somewhat unusual maneuvers.

Furthermore, even if Reynolds swerved the left wheels of the taxicab slightly over the center line immediately prior to the collision, there was no causal connection between that action, assuming it was negligent, and plaintiff's injuries, because the undisputed evidence showed that the accident was completely in the righthand lane, and further because it would have happened whether or not the taxicab's left wheels ever crossed the center line to the south. Benison's Mercury automobile, traveling at a very high rate of speed, simply ran into the rear of the taxicab on the right or north side of the highway.

Moreover, the physical facts with reference to the point of impact and the debris from the collision wholly refute and render unreasonable the plaintiff's testimony insofar as it might indicate that possibly the swerving of the taxicab constituted concurrent negligence. Truck Loading Co. v. Taylor, 174 Miss. 353, 164 So. 3 (1935). Mrs. Snowden said that, after she saw the taxicab swerve slightly to the left, she did not know what happened, so her testimony in fact does not conflict with the patrolman's statement that the point of impact as shown by the physical facts was wholly on the right side of the road, or with Reynolds' statement to the same effect. In that respect also the patrolman's and Reynolds' testimony is uncontradicted. And they are further confirmed by all of the physical facts.

Hence the record clearly establishes that the sole proximate cause of the collision and plaintiff's injuries was the negligence of George Benison in driving his car at an excessively high, unlawful rate of speed, and his failure to keep a proper lookout, to keep the car under control and to make any effort to properly pass the taxicab. The proximate cause was not any negligent act of appellants Reynolds and Rawlings. Therefore they were entitled to their requested peremptory instruction, and as

to them the judgment of the circuit court is reversed and judgment is rendered here for Reynolds and Rawlings.

■ ■ Appellant Bertha Benison, Administratrix of the Estate of George Benison, deceased, contends that Mrs. Snowden was incompentent to testify against the estate of the administratrix' deceased, under Code Section 1690, which provides that a person shall not testify to establish his own claim against the estate of a deceased person which originated during the lifetime of such deceased person. With that we agree. Cross v. Frost, 86 So. 2d 296 (Miss. 1956). But on the issue of liability we do not think that permitting plaintiff to testify was reversible error. Plaintiff was entitled to a peremptory instruction against Benison on liability, without any consideration whatever of plaintiff's testimony. Moreover, Mrs. Snowden did not give any evidence with reference to Benison's acts. She testified that she had been reading a comic book in the taxicab, that she did not see or know anything about the car approaching from the rear, and did not know what happened. Manifestly, she was knocked unconscious by the impact. So on the issue of liability there was no reversible error for two reasons. Plaintiff was entitled to a peremptory instruction against Benison, and, although she did not ask for one, the jury rendered a verdict for her. The correct result was reached. Moreover, Mrs. Snowden testified to no facts tending to establish her claim against Benison on the issue of liability. She simply did not know what happened.

■ ■ However, plaintiff testified in considerable detail concerning her injuries. Under Code Section 1690 she was an incompetent witness to establish her claim for damages against Benison. As to that appellant the case is reversed and remanded for a new trial on the issue of damages alone. See Revised Rules, Supreme Court of Miss. (1953), Rules 12, 13.

As to appellants Reynolds and Rawlings, reversed and judgment rendered; as to appellant Benison, administratrix, judgment affirmed on liability and reversed and remanded on damages.

*McGehee, C. J.,* and *Kyle, Arrington* and *Gillespie,* JJ., concur.