HAWKINS, ADMR. *v.* RYE

No. 40665 March 24, 1958 101 So. 2d 516

*Cason Rankin,* Tupelo; *Brown & Elledge,* Fulton, for appellant.

*Mitchell & McNutt,* Tupelo; *W. Herman Camp,* Fulton, for appellee.

Holmes, J.

On the morning of June 14, 1956, at about 9:15 o'-clock, the appellee, William H. Rye, accompanied by his wife, was driving his automobile south along the highway from his home in Fulton, Mississippi, to Nettleton, Mississippi. His automobile struck and ran over Roger Twain Hawkins, a child four and a half years of age, rendering him unconscious and injuring him to the extent that he died before he could be gotten to a doctor. William Thomas Hawkins, the father of the child, qualified as the administrator of his estate and brought this suit in the Circuit Court of Itawamba County against William H. Rye for damages for the alleged wrongful injury and death of the child. The suit was brought under Section 1453 of the Code of 1942, commonly known as the "wrongful death statute." The claimed right of recovery was predicated upon the alleged negligence of William H. Rye in the operation of his automobile on the occasion in question.

The trial of the case resulted in a jury verdict for the defendant and judgment was entered accordingly, and from that judgment this appeal is prosecuted.

The appellant contends on this appeal (1) that the court erred in denying his request for a peremptory instruction; (2) that the court erred in overruling a motion for a new trial upon the ground that the verdict of

the jury is contrary to the overwhelming weight of the evidence; (3) that the court erred in permitting the defendant, William H. Rye, to testify over the objection of the plaintiff upon the ground that he was an incompetent witness under Section 1690 of the Code of 1942, commonly known as the "dead man's statute", and (4) that the court erred in granting defendant's instruction No. 2.

The appellant's first two contentions direct our attention to a consideration of the evidence. The physical surroundings and general situation existing at the scene at the time of the tragic accident appear from the evidence without dispute. The highway was a black topped pavement, 18 feet wide, with graveled shoulders on each side four feet in width. The highway ran generally in a north and south direction. The home of Mrs. W. E. Hawkins, the grandmother of the child, was located on the west side of the highway, and on the north side of the home was the Hawkins' private garage from which a driveway led down to the highway. Opposite this driveway and on the east side of the highway was a mailbox which was located off the east shoulder of the highway and at a point 22 feet east of the center of the highway. The highway curved at a point 513 feet north of the mailbox, and from this point a motorist rounding this curve and traveling south could see the mail box. The child was staying with his grandmother during the week while his parents were at work. On the morning in question the child and his grandmother were proceeding to the mailbox. They came from the direction of the Hawkins' garage and crossed the highway from the west to the east side thereof, and went to the mailbox and looked in it. The grandmother and the child, the grandmother holding the child by the hand, then started to walk south along the east shoulder of the highway. It was shortly thereafter that the accident occurred. After the impact the body of the child was lying with his feet on the edge

of the west side of the black top and his body was cross-wise of the road. There were only three eye-witnesses to the actual occurrence, namely, the appellee, his wife, and the child's grandmother. The grandmother was not called as a witness by the appellant and no explanation was offered as to the failure of the appellant to present her as a witness.

The appellee, William H. Rye, testified, over the objection of the appellant, that on the morning in question he and his wife were traveling in his 1948 Chevrolet automobile along the highway from his home in Fulton, Mississippi to Nettleton, Mississippi; that he was driving and proceeding south; that as he emerged from the curve of the highway he saw the grandmother and the child cross the road; that the grandmother looked at him and saw him as they started across; that he slowed his car down to about 20 miles per hour; that they crossed from the west side to the east side of the highway and went to the mailbox; that they looked in the mailbox and that then the grandmother took the child by the hand and they started walking south along the east shoulder of the highway; that as he arrived at a point about opposite them, the child jerked loose from his grandmother and darted suddenly in front of the car, and that he cut his car to the right and applied his brakes but was unable to avoid striking the child; that his brakes had been recently relined and were in good condition.

Mrs. Rye corroborated her husband in all essential respects as to the actual occurrence of the accident. She said that the child was being held by the hand by his grandmother and that he suddenly jerked loose from his grandmother and ran in front of the car, and that her husband swerved to the right and reached for his brakes but was unable to avoid striking the child; that it all happened very quickly.

The appellant offered no witness to contradict the testimony of the appellee and his wife as to the actual

occurrence of the accident. He relied largely upon testimony as to measurements and distances, from which he argued that the accident could not have happened in the manner in which the appellee said it happened. The grandmother, who by reason of her relationship to the child, should naturally be friendly to the appellant's cause, was not presented as a witness, and it is therefore presumed that her testimony would have been adverse to the appellant and favorable to the appellee. Anderson v. Cumberland Telephone Company, 86 Miss. 341, 38 So. 788, Bunckley v. Jones, 79 Miss. 1, 29 So. 1000. In the case of Anderson v. Cumberland Telephone Company, supra, the Court said: ''The failure to present a witness who can be had, and who is presumed to be friendly to defendant, who knows exculpatory facts if anyone does, raises a strong presumption that such facts do not exist.''

■■ In view of the testimony, we are clearly of the opinion that the trial court was correct in refusing the appellant's request for a peremptory instruction, and that the verdict of the jury is not contrary to the overwhelming weight of the evidence but is amply supported by the evidence.

■■ It is next contended by the appellant that the court erred in permitting the appellee to testify over the objection of the appellant, based upon the ground that he was an incompetent witness under Section 1690 of the Code of 1942. The question of the competency of the appellee as a witness brings under review Section 1690 of the Code of 1942, and Section 1453 of the Code of 1942.

Section 1690 provides in its pertinent parts as follows: ''A person shall not testify as a witness to establish his own claim or defense against the *estate* of a deceased person which originated during the lifetime of such deceased person, or any claim he has transferred since the death of such decedent. . . . . '' (Emphasis ours).

It is not questioned that this statute applies not only to fixed debts but also to tort actions. Lamar v. Williams, 39 Miss. 342. Neither can there be any doubt under the prior decisions of this Court as to the purpose, object and policy of this statute, as it has been reenacted and brought forward in its present form.

In the case of Witherspoon, Administratrix v. Blewett, 47 Miss. 570, which was an action of trover to recover damages for the conversion of cattle, the Court declared the policy of the statute to be that "A living party, plaintiff or defendant, in a suit in which the representative of a decedent is a party, is not competent to establish his right or demand against the *estate,* nor does it matter whether the claim be set up by the living plaintiff against the *estate,* or whether it be by way of defense to a claim preferred by the legal representative of a decedent." (Emphasis ours).

In the case of Jacks v. Bridewell, 51 Miss. 881, the Court, speaking of the object of the statute, said: "The object is to prevent the assertion of rights to what a deceased person left, by virtue of some act of such deceased person, from being supported by the testimony of him who asserts the right . . . . . When death has placed the evidence of one of the parties to the transaction, out of which the claim arises, beyond the pale of the court, the statute enacts that the other shall not be heard, for or against such claim. As to that transaction, both of the parties thereto are dead, one through natural causes, the other by legislative enactment." The Court also in this case defined the term, "estate of a deceased person" as used in the statute. The Court said: "The term 'estate of a deceased person' is used, in its broad and popular sense, to signify all the property of every kind which one leaves at his death. Therefore, any 'right' asserted against real or personal property left by a deceased person, as accrued to the party by virtue of a dealing between him and such person since deceased, ren-

ders the person asserting it incompetent as a witness to maintain in his own behalf such assertion of right.''

It is to be specially noted that in the statute itself, Section 1690, Code of 1942, as well as in the prior decisions of this Court declaring the purpose and policy thereof, the disqualification of the witness arising under the statute is with reference to the establishment of the witness' claim or defense against the *estate* of a deceased person. If the *estate* of the deceased person is not affected, then the disqualification does not exist. We so held in the case of Fennell, Administratrix v. McGowan, 58 Miss. 261, wherein the Court said: ''To work a disqualification of an interested witness, the estate of a decedent must be directly affected by the pending suit.''

In determining the competency of the appellee as a witness in this action, we are confronted with the question whether the *estate* of the deceased, Roger Twain Hawkins, is or will be affected by this suit. We think the question must be answered in the negative. The action is one under the wrongful death statute brought by the administrator of the estate of Roger Twain Hawkins, deceased, against the appellee, Rye, alleging the wrongful death of the deceased, and charging that the same resulted from the negligence of the appellee Rye. The solution of the question of the competency of the appellee as a witness involves the construction and interpretation of Section 1453 of the Code of 1942, which provides in its pertinent parts as follows:

''Whenever the death of any person shall be caused by any real wrongful or negligent act or omission, or by such unsafe machinery, way or appliances as would, if death had not ensued, have entitled the party injured or damaged thereby to maintain an action and recover damages in respect thereof . . . . and such deceased person shall have left a widow or children or both, or husband or father or mother, or sister, or brother, the person or corporation, or both that would have been liable if death

had not ensued, and the representatives of such person shall be liable for damages, notwithstanding the death, and the fact that death was instantaneous shall, in no case, affect the right of recovery. The action for such damages may be brought in the name of the personal representative of the deceased person, for the benefit of all persons entitled under the law to recover or by widow, for the death of her husband, or by the husband for the death of the wife, or by the parent for the death of a child, or in the name of a child, or in the name of a child for the death of a parent, or by a brother for the death of a sister, or by a sister for the death of a brother, or by a sister for the death of a sister, or a brother for the death of a brother, or all parties interested may join in the suit, and there shall be but one suit for the same death which shall ensue for the benefit of all parties concerned, but the detremination of such suit shall not bar another action unless it be decided on its merits . . . . . . Damages recovered under the provisions of this section shall not be subject to the payment of the debts or liabilities of the deceased, except as hereinafter provided, and such damages shall be distributed as follows: . . . . ."

In urging the incompetency of the appellee as a witness, the appellant relies upon the cases of Cross v. Frost, 86 So. 2d 296, and Reynolds v. Snowden, 92 So. 2d 232. Neither of these cases, however, involves the question here presented. In the Frost case, Frost and Cross were involved in an automobile collision. Cross was killed. Frost sustained personal injuries. Frost sued the administrator of the estate of Cross for damages. The Court held, and we think rightly so, that Frost was an incompetent witness since the estate of Cross was directly affected by the suit. In other words, in the event of a recovery by Frost, the amount thereof would have to be paid out of the estate of Cross and would, therefore, result in a depletion of the Cross estate, thereby directly

affecting the estate of Cross. The same is true of the Snowden case. Mrs. Snowden sued the administrator of the estate of George Benison, deceased, for damages alleged to have resulted from a collision in which she was injured and Benison was killed. Mrs. Snowden was held to be an incompetent witness because her claim was a direct claim against the estate of Benison, deceased, and in the event of her recovery the judgment would have to be paid out of the assets of the estate of the deceased, and, therefore, the estate of the deceased would be to that extent depleted. Neither the Frost case nor the Snowden case was as a matter of fact governed by the wrongful death statute. Each was a suit by a surviving motorist against the estate of a deceased motorist to recover damages from the estate of the deceased motorist. Of course, in each of these cases the estate of a deceased person was directly affected by the pending suit, since, as stated, any recovery would to the extent thereof deplete the estate of the deceased person.

 ██ The question here presented, however, is as to the competency of a surviving motorist to testify as a witness in defense of a suit brought against him by the administrator of a deceased person under the wrongful death statute. The identical question has not heretofore been directly decided by this Court. The authorities from other jurisdictions are not in accord. 58 Am. Jur., Witnesses, Sec. 224, p. 162. An elaborate annotation setting forth the opposing views appears in 36 A. L. R., pages 960, et seq.

We need not, however, resort to other jurisdictions in determining the question here presented. The language of our own statutes, Sections 1690 and 1453, and the construction which this Court has heretofore placed thereon, lead inevitably to the conclusion that the appellee Rye was a competent witness to testify in defense of the suit brought against him. Section 1690 disqualified him only to testify as a witness in a claim brought

against him by the *estate* of a deceased person. The suit against him was not an action by the *estate* but was an action brought by the administrator on behalf of surviving heirs named in the wrongful death statute. Any recovery in the suit would not have enhanced the estate of the deceased but would have been paid to designated heirs under the statute. The *estate* of the deceased was, therefore, not affected either beneficially or adversely or otherwise by the pending suit. What this Court said in the case of Fennell, Administratrix v. McGowan, supra, becomes pertinent and decisive of the question with which we are now confronted. The language of the Court in the case of Fennell, Administratrix v. McGowan, supra, was as follows: "To work a disqualification of an interested witness, the *estate* of a decedent must be directly affected by the pending suit." (Emphasis ours).

That the conclusion that the estate of the deceased, Roger Twain Hawkins, could not be affected directly or otherwise by the pending suit seems to us inescapable from the interpretation heretofore placed upon Section 1453 by the prior decisions of this Court. In the case of Hasson Grocery Company v. Cook, 196 Miss. 452, 17 So. 2d 791, the Court held that the wrongful death statute, Section 1453, is not a statute of survival, but creates a new and independent cause of action. In the case of Mississippi Power Company v. Archibald, 189 Miss. 332, 196 So. 760, the Court said:

"Section 510, supra, (now Sec. 1453) provides that damages for the wrongful injury and death of a married man shall be equally distributed to his wife and children, if he leaves such surviving him. The suit to recover such damages may be brought in the name of the personal representative for the benefit of the persons entitled under the law to recover, or by the widow for her own benefit, and on behalf of the children. The personal representative is not a necessary party where any of the

persons entitled to recover under the law survive the deceased. He is not entitled, in behalf of the estate, to any part of the recovery, if any, that may be had. It is exempt in favor of the widow and children from the payment of any debts owing by the estate. He cannot administer on it as an asset so as to be entitled to commissions thereon as part of his compensation as an administrator. In other words, it is their right of action, and the law permits them, in their discretion, to sue either in his name or in their own to recover the damages accruing to them, and to them alone. In the case at bar he is purely a formal party, with no more interest in the litigation, so far as the estate is concerned, than a next friend would have. No title to damages recoverable for the wrongful death of a person ever vests in an administrator under said section 510, supra, by virtue of his appointment, where the deceased leaves surviving him those entitled under the law to recover the damages sustained. Unless asked to lend his name as nominal plaintiff, the suit is of no concern to him. Moreover, if his name is used, the estate is neither benefited by a recovery nor adversely affected by a failure to sustain the cause of action sued on...... The statute specifically says that the recoverable damages 'shall go to' the legal representative and be subject to debts only in the event there are none of the next of kin described in the statute entitled to recovery. Neither the damages to the decedent, nor to the widow and children in this case 'go to' the personal representative of the estate in any event, and he is clearly not the person under the facts in this case 'entitled under the law to recover.' ''

The interpretation placed upon said Section 1453 by this Court in the case of Mississippi Power Co. v. Archibald, supra, makes it entirely clear that the estate of the deceased, Roger Twain Hawkins, could not be affected beneficially or adversely or otherwise by the suit here involved, and, therefore, under the case of Fennell, Ad-

ministratrix v. McGowan, supra, the appellee was not disqualified to testify as a witness in defense of the suit. It is not material that the Court in the case of Mississippi Power Company v. Archibald, supra, was construing the statute, Section 1453, in determining the question of the removability of the cause from the State Court to the Federal Court. The statute has but one meaning and that is the same whether the question involved be one of removability or one as to the competency of a defendant to testify in defense of a suit brought against him under the statute by the administrator of a deceased person. We think it is clear under the interpretation heretofore placed upon said Sections 1690 and 1453 that in the suit here before us the estate of Roger Twain Hawkins cannot be thereby affected either adversely, beneficially, or otherwise, and that, therefore, under the decision of this Court in Fennell, Administratrix v. McGowan, supra, the appellee Rye was not disqualified to testify as a witness and that the trial court was correct in so holding.

It is finally contended by the appellant that the court erred in granting defendant's instruction No. 2. We have carefully considered this instruction and find no reversible error therein, particularly in view of instructions granted to the appellant.

In the light of the views hereinbefore expressed, it is our conclusion that the judgment of the court below should be and the same is affirmed.

Affirmed.

All Justices concur except *Hall, Lee* and *Arrington, JJ.,* who dissent.

LEE, J. dissenting:

With reference, I think that, under Section 1690, Code of 1942 Recompiled, the testimony of Rye, the defendant, was not admissible, and that the case should be reversed and remanded.

Rye's alleged negligence of course existed before and at the time of the little boy's injury from which death resulted. Consequently the alleged wrongful act, out of which the claim arose, obviously originated during the lifetime of the deceased.

The applicable part of Section 1690, supra, is set out in the majority opinion, and there is no need to repeat it here. It is enough to say that the statute bars a person from testifying *either to establish his claim against* the estate of a deceased person *or to establish his defense against* the estate of a deceased person.

In Griffin v. Lower, 37 Miss. 458 (1859), it was said that the purpose of the statute was "to protect the estate of deceased persons against the operation" of an earlier statute which had made "parties competent witnesses for themselves, or against themselves, if required by the opposite party." It was conceded by counsel that "the act intended to exclude one party, when the other, being dead, could not confront him."

The rule, announced in Griffin v. Lower, supra, was adhered to and reaffirmed in Lamar v. Williams, 39 Miss. 342, where it was said: "The spirit and policy of the proviso appear clearly to be, *that a living party, either plaintiff or defendant, in an action in which the representatives of a decedent's estate are a party, shall not be competent to testify in his own behalf* to establish his demand or right, asserted and relied on in the action, against the estate, if the matter exceed the sum of fifty dollars; because an undue advantage would thereby be given to the living party, by enabling him to testify to matters which took place between him and the decedent, and which, resting entirely in the private transactions of the parties, could not be disproved or explained by reason of the death of the other party." (Emphasis supplied.)

In Witherspoon v. Blewett, 47 Miss. 570, the opinion, in commenting on the holding in Griffin v. Lower, 37 Miss. 458, Lamar v. Williams, 39 Miss. 342, and Faler v.

Jordan, 44 Miss. 289, said: "These cases declare the policy of the statute to be, that 'a living party, plaintiff or defendant, in a suit in which the representative of a decedent is a party, is not competent to establish his right or demand' against the estate. *Nor does it matter whether the 'claim' be set up by the living plaintiff against the estate, or whether it be by way of defense to a 'claim' preferred by the legal representative of a decedent. The manifest reason for the exclusion* of such witness *is to shut out* ex parte evidence touching matters and transactions *which transpired in the lifetime of the deceased, after death has sealed the lips of one of the parties, so that his version and explanations and statements cannot be heard.* It was, too, to prevent the establishment of false and simulated claims, by such ex parte and interested testimony, against estates." The Court also said: "This much is plain; if the suit be for a tort or a contract done or made in the lifetime of the intestate, the survivor is incompetent to prove the one or the other against the estate; so, *if he is sought to be charged by the administrator with either, he cannot testify in his discharge.*" (Emphasis supplied.)

In Jacks v. Bridewell, 51 Miss. 881, in construing the term "estate of a deceased person" and the statute, the Court made these observations: "Jacks in his bill asserts a 'right,' which originated during the lifetime of Braswell, and out of a transaction with Braswell, and if it is 'against the estate of a deceased person,' he is incompetent as a witness. *The term 'estate of a deceased person' is used, in its broad and popular sense, to signify all the property of every kind which one leaves at his death.* * * * The exclusion is not confined to cases in which the controversy is between him who would testify to his 'claim' or 'right', and the administrator or executor of the deceased person, *but it extends to every assertion of such right by a party to any part of the estate left by a deceased person, and claimed by such party, or to be*

*subject to his demand,* by reason of an alleged trans-
action between such party and the deceased person. * * *
Before statutes on the subject, parties to suits were not
competent witnesses in their own behalf. With the re-
moval of the incompetency of parties as witnesses for
themselves, *there was excepted from the cases in which
they might testify, all in which a right is asserted against
any part of the estate of a deceased person, no matter in
whose hands it may be at the time of the controversy, and
which 'right' rests upon something occurring in the life-
time of such deceased person, and having relation to him.
* * * When death has placed the evidence of one of the
parties to the transaction, out of which the claim arises,
beyond the pale of the court, the statute enacts that the
other shall not be heard, for or against such claim. As to
that transaction, both of the parties thereto are dead, one
through natural causes, the other by legislative enact-
ment.''* (Emphasis supplied.)

In Rothschild v. Hatch, 54 Miss. 554, Judge Campbell,
who had written the opinion in Jacks v. Bridewell, supra,
in following that case, said: ''This case was decided after
much deliberation. Our views are expressed in the opin-
ion in very carefully chosen language, cautiously applied
to the facts of the case. We have since considered the
views therein set forth, and adhere to them.''

In Whitehead v. Kirk, 104 Miss. 776, 61 So. 737, the
Court reviewing and following the above-cited cases
said that ''The policy of the statute is to close the mouth
of the living, because death has sealed the lips of the
dead,'' and ''The claim or right to enforce the payment of
a debt against the *estate of a deceased person* does not
originate until the person is dead, but the claim or right
upon which the remedy is sought may have originated be-
fore or after the death. If it originated before the death,
the person making the claim is not permitted to establish
same by his own testimony * * *''. (Emphasis supplied.)
Whitehead v. Kirk, 104 Miss. 823, 62 So. 432. Suggestion

of Error. See also Brown v. Parker, 143 Miss. 291, 108 So. 492.

Conversely, the person defending the same would not be permitted to defend by his own testimony.

This Court has expressly held, in actions ex delicto, that the survivor in an automobile wreck, who sues the estate of the person whose alleged negligence proximately caused the plaintiff's injury, can not testify to establish his claim against the estate of the decedent. Cross, Admr. v. Frost, (Miss.) 86 So. 2d 296; Reynolds v. Snowden, (Miss.) 92 So. 2d 232.

Since the ban upon testimony against the estate of a deceased person, under Section 1690, Code of 1942 Recompiled, extends alike to the claimant, who would establish his claim, and to the opposite party, who would defend against such a claim, the opinion in Cross, Admr. v. Frost, supra, placed great reliance upon Lamar v. Williams, supra, because, in that case, Lamar and Kersh, representing to Williams that one of his slaves had been harboring a runaway slave of Lamar's, obtained Williams' consent to carry his slave to the home of a neighbor there to be confronted by the accusing slave. In their effort to extort information about the runaway slave, these men whipped Williams' slave severely. For this wrong, Williams sued them; but he died before the case could be tried. The action was revived in the name of the administrator of Williams' estate. During the trial, after the plaintiff had rested, Lamar and Kersh offered to testify that they had permission from Williams to whip his slave and that the punishment was not excessive. The trial court refused to admit this testimony and held that the witnesses were incompetent under Article 190, p. 510, Code of 1857. That action of the court was upheld and the cause was affirmed.

A number of later decisions from other jurisdictions have fully vindicated the decision of this Court in Lamar v. Williams, supra. See particularly L. R. A. 1916 D,

pp. 811-2, where Irvin v. Nolde, 164 Pa. 205, 30 Atl. 246 (1894), and Hallowach v. Priest, 113 Me. 510, 95 Atl. 146 (1915), are annotated; and 36 A. L. R. 960, where Abelein v. Porter, 61 N. Y. Supp. 144, (1899), Minns v. Crossman, 193 N. Y. Supp. 714 (1922), and Forbes v. Snyder, 94 Ill. 374 (1880), are annotated; and 8 A. L. R. 2d 1113, where Waggoner v. Gummerum, 231 N. W. 10 (1930), a Minnesota case, is annotated.

In Irvin v. Nolde, supra, it was held that the disqualifying statute is not confined to cases of contracts, but applies to an action of trespass.

In Hallowach v. Priest, supra, the administrator, for the estate, sued to recover damages for the death, alleged to have occurred by reason of the negligence of the defendant in the operation of an automobile. It was held that the disqualifying statute operated to exclude the testimony of the defendant in regard to the circumstances of the accident. The Court said: ''The statute makes no distinction between actions of contract and actions of tort. Nor do we think there is any distinction in reason. The statutory policy that living parties should not be permitted to tell their stories when the lips of adverse parties are sealed by death applies with equal force to torts and contracts. In torts, as in contracts, all the parties ordinarily are cognizant of the circumstances attending the tort. And if by reason of death some of them cannot testify, the others should not. That is the policy of the statute. And this policy has been enforced many times by the court.''

In Waggoner v. Gummerum, supra, the defendant's offer, in a death action by the administrator, to testify that the decedent made no complaint about the manner in which the automobile was being driven, was held to have been properly excluded.

But the majority opinion holds that, under the wrongful death statute, Section 1453, Code of 1942 Recompiled, the father and mother became the sole beneficiaries of

the claim for the death of their son; that, although the suit was brought in the name of an administrator, any recovery would inure solely to their benefit; that, since they are the interested parties and are alive, the present controversy is between them and Rye; and that Rye's testimony was in fact not in defense of a claim against him by the estate of a deceased person, but was in defense of a claim by living parties. For this conclusion, reliance is placed upon Fennell, Admr. v. McGowan, 58 Miss. 261, and Miss. Power Company v. Archibald, 189 Miss. 332, 196 So. 760.

In Fennell, Admr. v. McGowan, supra, McGowan sold the Falconer note of $500 with the collateral note of $1,500, not to John D. Fennell, but to John D. Fennell, agent of M. T. Fennell. The collateral note, as a result of no effort to collect, became barred by the statute of limitations. Of course John D. Fennell did not own the securities nor did his estate succeed to ownership thereof following his death. Nevertheless, when he died, the administrator of his estate, for the use of M. T. Fennell, sued McGowan to recover. McGowan was permitted to testify, and this Court, in affirming the decision of the trial court said: "The fact that the result of this suit may cause the institution of a suit by M. T. Fennell against the estate of John D. Fennell, for the failure of the latter to deal properly with the collateral held by him as agent of the former, does not disqualify McGowan to testify in this case. In such a suit McGowan will have no interest, and in this suit John D. Fennell's estate has no interest. To work a disqualification of an interested witness, the estate of the decedent must be directly affected by the pending suit. That it may be ultimately affected in some other suit is immaterial."

On the contrary, the administrator of the estate in this case had the absolute right to bring this suit.

The so-called dead man's statute was not involved in the case of Mississippi Power Company v. Archibald

supra. The question there was the deprivation of a substantive right afforded by Federal law. Swearingen's widow and three children were entitled to receive whatever sum that might be recovered for his death. These survivors were citizens of Kemper County. The power company was a Maine corporation. In a controversy between these parties as plaintiffs and defendant, if the demand exceeded $3,000, the power company was entitled, under Federal law, to remove the cause from the State to the Federal court. Obviously to prevent a removal, Archibald, a citizen of Maine, was appointed administrator of the estate of Swearingen, and he brought the suit, under the wrongful death statute, Section 1453, Code of 1942, against the power company in the Circuit Court of Kemper County for the benefit of the widow and children. The company's petition for removal was denied. The opinion, in reversing the above action of the trial court, held that the interested parties may sue in the name of an administrator, but that "they cannot, by electing to do so, deprive the Federal Court of the jurisdiction vested in it by virtue of the diversity of citizenship here existing between the real and only parties in interest." As above-stated, that case dealt with the question of substantive rights. In the present controversy, a procedural question only is involved, namely, the admissibility of evidence. Undoubtedly the sovereign may determine the competency and admissibility of evidence by which a litigant seeks the attainment of a substantive right.

Section 1453, Code of 1942 Recompiled, authorizes the suit to be brought either by an administrator of the deceased person, for the benefit of all persons entitled under the law to recover, or by such persons themselves. The one who first brings the suit has the right to prosecute and maintain it to a conclusion. J. J. Newman Lumber Company v. Scipp, 128 Miss. 322, 91 So. 11; Miss. Power & Light Company v. Smith, 169 Miss. 447, 153 So.

376; Southern Pine Electric Power Association v. Denson, 214 Miss. 397, 57 So. 2d 859.

In J. J. Newman Lumber Company v. Scipp, supra, an administratrix of the estate of Charlie Scipp had been appointed and had already instituted suit and obtained service of process on the defendant. Any recovery from that litigation would have inured solely to the benefit of Fannie Scipp, the widow and sole heir. But she brought a suit in her own name and obtained a verdict and judgment. On appeal this Court, solely because of a pending suit by the administratrix of the estate, reversed the judgment in her favor, and entered judgment for the appellant.

New York and Illinois cases have rejected this contention.

In Abelein v. Porter, supra, it was argued that the administrator, who brought the suit for recovery under the wrongful death statute, which was for the exclusive benefit of the next of kin, was not an administrator in the ordinary acceptation, but simply a trustee for certain specified purposes. But the court answered that this "novel proposition" was founded upon a misapprehension of the real purpose for which the inhibiting statute was enacted, that its design was manifestly for the purpose of depriving a surviving party to the transaction of the unfair advantage which he would gain by giving his version of the controversy when the other party was prevented by death from being heard to contradict or explain the same, and that no sufficient reason suggested itself why the statute should not be applied to every action brought by an administrator, without reference to the disposition to be made of the recovery. Minnis v. Crossman, supra, is to the same effect.

In Forbes v. Snyder, supra, it was contended that the so-called dead man's statute applied only to those cases by administrators wherein the estate of the deceased person would be increased or diminished, and that dam-

ages in the case in no event would constitute a part of the estate of the deceased, but would go to the next of kin. The Court replied that, while it was true that the damages were not strictly any part of the estate, they constituted a fund cast upon his next of kin by means of his death, and that the case surely came within the letter of the statute and within its spirit; that the tongue of the deceased was silent as to the events which led to his death, and that the same reasons which justified the limitation of the general statute so as to silence adverse parties where the effect of the proceeding was to increase or decrease the estate seemed equally cogent in a case like the one then before the Court. Consequently the defendant was held incompetent to testify.

Under the majority view, holding the testimony of the defendant admissible in this case, the jurisprudence of this State will now sanction this incongrous result: Two motorists, married, with two children each, in separate automobiles, have a headon collision in which one of them is killed and the other seriously but not fatally injured. The survivor sues the estate of the decedent to recover damages on account of the alleged negligence of the decedent. Under Cross, Admr. v. Frost, and Reynolds v. Snowden, supra, he cannot testify. On the contrary, if the estate of the decedent sues the survivor to recover for the alleged wrongful death, such survivor may testify because the administrator, in that suit, would be acting simply for the widow and children, who are living persons. Thus the survivor, in the first instance, cannot testify because both of the parties to the transaction ''are dead, one through natural causes, the other by legislative enactment.'' Jacks v. Bridewell, supra. But, in the second instance, that salutary rule has no application. Its efficacy cannot be invoked.

*Hall* and *Arrington, JJ.,* join in this dissent.